# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2049

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Angela Lynn White, also known | * | |
| as Angela Jost, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 16, 2011
Filed: April 5, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE Circuit Judges.

_____

RILEY, Chief Judge.

A jury convicted Angela White of "assault resulting in serious bodily injury" in violation of 18 U.S.C. §§ 2, 1153 and 113(a)(6). At trial, six eyewitnesses, including the victim, Kevin Campbell, and White's minor son, testified White and her minor nephew assaulted Campbell during a party at White's home. The district court[1] sentenced White to 48 months imprisonment. White appeals, and we affirm.

_____

[1]The Honorable Laurie Smith Camp became Chief Judge of the United States District Court for the District of Nebraska on December 1, 2011.

## I. BACKGROUND

### A. Facts[2]

On the evening of June 17, 2010, White and some friends visited the Sportsmen's Bar in Niobrara, Nebraska. White's party at the bar included her friends Audrey Trudell, Byron Saul (Saul), and Rosie Saul, as well as White's minor son. Later, Campbell, White's ex-boyfriend, came to the bar. Campbell testified he spoke with White, and White invited Campbell to visit White at her house after they left the bar. White admits she and Campbell were at the bar at the same time, but denies speaking with Campbell or making this invitation.

White and her party eventually left the bar and went to White's house on the Santee Sioux Indian Reservation. Shortly after their arrival, White's minor nephew joined the party. White's nephew, White's son, and Saul congregated in the kitchen, and White remained outside. Later, Marsha Pike joined the party, staying outside with White. With the exception of White's son, it appears most, if not all, of White's guests were drinking alcohol.

Campbell arrived in the early morning hours of June 18, shortly after Pike. White and Pike were still outside when Campbell pulled into the driveway. There are conflicting accounts as to what happened next. Campbell testified White immediately confronted him, asking Campbell what he was doing there and demanding he leave immediately. According to Campbell, White "grabbed [his] long hair, threw [him] down, [and] started punching" and kicking him.

None of the other witnesses, with the exception of White herself, witnessed the start of the fight. However, Pike, who claimed to be in the house when the assault started, as well as Saul and the two minor boys, who were in the house when the

---

[2]We construe the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences in favor of upholding the verdict. See United States v. Cannon, 475 F.3d 1013, 1016 (8th Cir. 2007).

assault started, all came outside and saw that White had Campbell on the ground and was punching and kicking him. Of these witnesses, only White's nephew claimed to see Campbell attack White or defend himself against White.

Pike, Saul, and White's son attempted to break up the fight, with little success. White's nephew, who was very intoxicated the night of the assault, joined White, kicking Campbell in the face with tennis shoes.

White's own testimony was dramatically different from that of the other witnesses. White testified she did not invite Campbell or Pike to her home, and asked Pike to leave. Rather, Pike, who was very drunk, entered White's home to cause trouble. White was attempting to escort Pike outside when Campbell arrived. When White and Pike came outside, Campbell began immediately yelling at White and making threats. According to White, Campbell attacked her, and White pushed Campbell down in self-defense, and did not punch or kick him. White claims when her nephew attacked Campbell, she restrained her nephew and told him to stop his attack. White accused the other witnesses, including her own son, of lying.

Eventually, White's son called White's adopted mother, Mary Morrill, for help. When Morrill arrived, Campbell was on the ground, bleeding. Morrill called the police.

When the police arrived, White's nephew took the blame for the assault, telling the police officers, "I did it." The officers arrested White's nephew and took photographs of his hands and shoes, which were covered in blood. When the police interviewed White, she told them her nephew was trying to protect her from Campbell because Campbell was "getting loud." White did not tell the officers she had hit or kicked Campbell, and did not tell the officers Campbell had physically assaulted her.

Campbell suffered severe injuries as a result of the attack. Campbell testified to "[s]welling of the face, right eye was swelled shut, left eye was barely open, cracked eyelid on the top of my eye . . . , bone cracked, fractured my nose." Campbell also suffered loss of eyesight, blurred vision, chronic headaches, and memory loss following the attack.

### B.     Procedural History

White, Saul, and White's nephew and son, were all charged with assault—White and Saul in federal court and the two minor boys in tribal court. White's nephew pled guilty, admitting to his role in the assault. The charges against Saul were dismissed and White's son was acquitted.

A jury convicted White of assaulting Campbell. The United States Probation Office prepared a presentence investigation report (PSR) and revised sentencing recommendation under the United States Sentencing Guidelines (U.S.S.G. or Guidelines). The PSR calculated a total offense level of 25, a criminal history category of I, and an advisory sentence range of 57 to 71 months. The district court varied downward from the Guidelines range, sentencing White to 48 months imprisonment. White now appeals, and we affirm.

## II.    DISCUSSION

White argues (1) there was insufficient evidence to support the jury's verdict; (2) the district court erred by (i) applying the U.S.S.G. § 3C1.1 enhancement for obstruction of justice, and (ii) denying White's request for an adjustment under U.S.S.G. § 3B1.2(b), because of what she considered was her minor participation in the offense; and (3) White's below-Guidelines sentence was substantively unreasonable because the district court (i) failed to take into account White's "extraordinary" rehabilitation, (ii) should have granted a more substantial downward variance to negate the impact of the U.S.S.G. § 2A2.2(b)(2)(B) enhancement for use of a dangerous weapon, and (iii) unduly relied on the advisory Guidelines calculation.

Eyewitness testimony presented at trial was more than sufficient for a rational jury to find, beyond a reasonable doubt, White guilty of assault. White argues the witnesses against her were intoxicated, biased, or otherwise lacked credibility. But "the jury is always the ultimate arbiter of a witness's credibility, and this Court will not disturb the jury's findings in this regard." United States v. Claybourne, 415 F.3d 790, 796 (8th Cir. 2005) (quoting United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003) (internal quotation marks omitted)). "Attacks on the sufficiency of the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate ground for reversal." United States v. McKay, 431 F.3d 1085, 1094 (8th Cir. 2005). We decline to substitute our own judgment for that of the jury.

The obstruction of justice enhancement was proper because the district court found White committed perjury. The district court relied upon the testimony of White's son, which the district court found to be "unquestionably" and "completely credible," and which was inconsistent with White's own testimony. See U.S.S.G. § 3C1.1, cmt. n.4(b) (explaining commission of perjury relating to the charged offense may be obstruction of justice); see also United States v. Yarrington, 634 F.3d 440, 452 (8th Cir. 2011) (upholding the trial court's application of the obstruction of justice enhancement because the trial court found the defendant "testified falsely concerning a material matter").

White was not entitled to a sentence reduction based on her alleged minor participation in the offense. White argues the jury "could have found that [White] simply aided and abetted [her nephew] in the commission of the assault." The district court rejected this argument, finding (1) there was no evidence to support this theory, and (2) as the adult relative of an intoxicated minor, and herself initiating and encouraging the assault, White probably was more culpable than her nephew. These findings are not clear error. See United States v. Mitchell, 613 F.3d 862, 870 (8th Cir. 2010) (standard of review); U.S.S.G. § 3B1.2, cmt. n.5 (stating the minor-

participant reduction applies where the defendant "is less culpable than most other participants").

The district court did not abuse its discretion by failing to take into account what White describes as her "extraordinary" rehabilitation. White never accepted responsibility for her offense and consistently maintained the witnesses against her lied and were biased and her nephew, rather than White, was responsible for the assault. White's conduct does not demonstrate extraordinary rehabilitation, if any rehabilitation at all.

White was not entitled to a downward variance because her advisory Guidelines range included a dangerous weapon enhancement. White does not dispute this enhancement applies to her offense. White emphasizes her nephew kicked the victim with tennis shoes, which can be a dangerous weapon in certain circumstances. See United States v. Steele, 550 F.3d 693, 699 (8th Cir. 2008) (noting in criminal prosecutions for assault with a dangerous weapon, whether tennis shoes are a dangerous weapon is a question of fact). Under U.S.S.G. § 1B1.3(a)(1)(A), the enhancement applies to White because she "aided, abetted, counseled, . . . [or] induced" her nephew's attack against the victim. Although the record is silent as to whether White herself wore tennis shoes when she kicked the victim in the head, the district court did not abuse its discretion by applying this enhancement. Therefore, the inclusion of the enhancement in White's advisory Guidelines range does not render White's actual sentence substantively unreasonable.

Finally, we reject White's argument the district court placed undue reliance on the advisory sentencing Guidelines. The district court discussed the 18 U.S.C. § 3553(a) sentencing factors and found "a sentence somewhat below the guideline range would serve all of the goals and objectives of the statutes." "Where a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still

-6-

further." <u>United States v. McKanry</u>, 628 F.3d 1010, 1022 (8th Cir. 2011) (quoting <u>United States v. Moore</u>, 581 F.3d 681, 684 (8th Cir. 2009) (internal marks omitted)).

## III. CONCLUSION

The district court did not commit any error. We affirm the judgment and sentence.

_____