# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2684

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Indadeeq Omar, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  March 13, 2009
Filed:  June 10, 2009 (Corrected: 06/30/2009)

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Indadeeq Omar appeals the 72-month sentence the district court[1] imposed following her conviction by a jury for health care fraud and money laundering.  We affirm.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

# I.

Omar and her husband Mohamed Essa owned and operated Global Languages and Consulting Services, Inc. ("Global"), an interpreting company based in Minnesota. Global contracted with Medica Health Plans ("Medica") to provide interpreter service to Medica's public assistance insureds. Medica trained both Omar and Essa on how to submit claims to Medica.

In 1999, Tou Chaiker Vang, a Medica employee, noticed that Global was submitting an unusually high volume of claims and that many of those claims did not correspond with medical appointments. Vang suspected that these were false claims, and he contacted Omar and Essa and offered to assist them with the fraud in return for a portion of the ill-gotten gains. Vang offered to provide Omar and Essa with information about actual medical appointments so that the false claims would be more difficult to detect. Vang began providing this information directly to Omar. Omar furnished Vang with common Somalian names that Vang could use to locate records for Medica patients.

In 2002, Vang expressed concern to Omar that Global was continuing to submit fraudulent claims that did not correspond to actual dates of medical visits, and Vang requested that Omar only submit claims where there was a corresponding medical visit. Omar ignored Vang's request, and Vang began reversing some of the claims. This upset Omar, and she began withholding money from Vang. Vang eventually quit sending medical information to Omar.

In the fall of 2004, a Medica internal fraud investigator discovered the discrepancy between the submitted claims for interpretive services and the lack of corresponding medical visits. After meeting with Omar and Essa, Medica terminated its contract with Global and referred the matter to federal law enforcement. In a subsequent search of Omar's and Essa's residence, law enforcement agents discovered

-2-

boxes of Medica patient information, including lists with actual dates of medical visits, along with faxes sent from Vang to Omar urging Omar to stop filing claims without corresponding medical visits. The total cost of fraudulent claims submitted by Global exceeded $1.7 million.

A grand jury returned a Second Superseding Indictment charging Omar and Essa with one count of conspiracy to commit health care fraud, see 18 U.S.C. §§ 371, 1347, twelve counts of health care fraud and aiding and abetting health care fraud, see id. §§ 2, 1347, one count of conspiracy to commit money laundering, see id. §§ 371, 1956(a)(1)(A)(i), (a)(1)(B)(i), (h), nineteen counts of concealment money laundering and aiding and abetting concealment money laundering, see id. §§ 2, 1956(a)(1)(B)(i), and seven counts of promotion money laundering and aiding and abetting promotion money laundering, see id. §§ 2, 1956(a)(1)(A)(i). The grand jury also indicted Omar on six counts of aggravated identity theft. See id. § 1028A. Vang agreed to plead guilty to one count of conspiracy to commit health care fraud and one count of conspiracy to commit money laundering, and to cooperate and testify at Omar's trial. Vang received a sentence of one year and one day imprisonment.

Prior to her trial, Omar encouraged two witnesses to testify falsely at trial. Omar had used the name of Ayan Salah, a Somali interpreter, on certain checks that Omar then cashed herself. Omar approached Salah and asked that she testify that she knew about the checks and had given Omar permission to cash them for her. When Salah refused, Omar asked if Salah's mother would be willing to falsely swear that she had received money in exchange for the checks. Omar also asked Amina Achlouj, a Global employee, to testify that Omar's brother Ahmed, not Omar, had run Global and that Achlouj had worked for Ahmed. Achlouj also rejected Omar's request. Following an eight-day trial, a jury convicted Omar on all counts of the Second Superseding Indictment; however prior to sentencing, the government moved to dismiss the aggravated identity theft charges because the conduct predated the effective date of the statute.

The presentence report (PSR) separated the convictions into two groups–one group for the Health Care Fraud convictions and one group for the Money Laundering convictions. See United States Sentencing Commission, Guidelines Manual, §§3D1.1, 3D1.2. With respect to the Health Care Fraud convictions, the PSR recommended a base offense level of six, see U.S.S.G. §2B1.1(a)(2), which was increased by 16 levels for a loss between $1 million and $2.5 million, see U.S.S.G. §2B1.1(b)(1)(I). The PSR recommended a two-level increase for Omar's organizer and manager role in the offense, see U.S.S.G. §3B1.1(c), a two-level increase for abusing a position of trust, see U.S.S.G. §3B1.3, and a two-level increase for obstruction of justice, see U.S.S.G. §3C1.1, resulting in an adjusted offense level of 28.

Under the Money Laundering group, the PSR recommended a base offense level of 22, see U.S.S.G. §2B1.1(a)(2), (b)(1)(I), §2S1.1(a)(1) (base offense level is determined using the offense level for the underlying offense from which the laundered funds were derived), with a two-level increase because Omar was convicted under 18 U.S.C. § 1956, see U.S.S.G. §2S1.1(b)(2)(B) (increase by 2 levels where conviction was for money laundering under § 1956), and a two-level increase for obstruction of justice, see U.S.S.G. §3C1.1, resulting in an adjusted offense level of 26. Because the adjusted offense level for the Health Care Fraud group was greater than the adjusted offense level for the Money Laundering group, the PSR used the adjusted offense level of 28 from Health Care Fraud group along with Omar's category I criminal history to calculate a Sentencing Guidelines range of 78 to 97 months imprisonment.

Omar objected, as relevant to this appeal, to the two-level increase for abusing a position of trust and the two-level increase for her role in the offense. The district court sustained the objection to the increase for abusing a position in trust but overruled the objection to the increase for her role as an organizer or manager in the offense. In overruling the objection to the role-in-the-offense increase, the district

court explained: "The testimony at trial made it very clear that she was the organizer, leader in this case . . . ." Thus, Omar's adjusted offense level was 26 under both the Health Care Fraud group and the Money Laundering group, and, with her category I Criminal History, the appropriate Sentencing Guidelines range was 63 to 78 months.

The district court then heard from Omar's attorney about Omar's health condition along with the difficulties she had experienced in confinement, her history of working with refugees from Somalia, and her role within her family as caretaker to her mother, brother, and children. The government addressed the disparity between the recommended Guidelines range for Omar and the sentence received by Vang and noted that Vang had accepted responsibility for his criminal actions and had sought ways to make amends for his conduct whereas Omar had denied responsibility and attempted to subvert the process. The district court then noted the amount of loss, Omar's refusal to accept responsibility, and her attempt to manipulate the testimony of witnesses as factual considerations in determining a sentence that would protect the public from future fraudulent activities and promote respect for the law. The district court also addressed Omar's health matters and noted that she would continue to have access to medical care once in the custody of the Bureau of Prisons. The court sentenced Omar to 72 months imprisonment and recommended to the Bureau of Prisons that she be confined to a facility that could appropriately address her medical issues.

On appeal, Omar raises three arguments: (1) that the district court erred in imposing the two-level enhancement for her role in the offense, (2) that the district court failed to properly consider the 18 U.S.C. § 3553(a) factors in imposing the sentence, and (3) that the 72-month sentence is substantively unreasonable.

II.

"We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." United States v. Pepper, 518 F.3d 949, 951 (8th Cir.), cert. denied, 129 S. Ct. 138 (2008) (citing Gall v. United States, 128 S. Ct. 586, 597 (2007)). We first ensure that the district court did not commit a significant procedural error. Id. Such errors include "failing to calculate (or improperly calculating) the Guidelines range . . . failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence . . . ." Gall, 128 S. Ct. at 597. "We review the district court's factual findings for clear error, and its application of the guidelines de novo." United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009).

Omar's first and primary argument is that the district court erred in applying the two-level role-in-the-offense enhancement. Where a criminal defendant "was an organizer, leader, manager, or supervisor in any criminal activity" involving less than five participants, the two-level enhancement is applied. See U.S.S.G. §3B1.1(c). The PSR stated that the enhancement was appropriate because Omar oversaw the work activities of Amina Achlouj. The government concedes that Achlouj was not a participant in the fraud for purposes of the enhancement but maintains that the facts developed at trial show that Omar supervised Essa and Vang, both of whom are criminally responsible participants. Therefore, the government argues, Omar was the "dominating force" in the conspiracy. The district court applied the enhancement because "[t]he testimony at trial made it very clear that [Omar] was the organizer, leader in this case."

We conclude, however, that we need not review this finding and application of the enhancement for her role in the offense because it will not affect Omar's Sentencing Guidelines range. Even if the enhancement was not applied to the offense level under the Health Care Fraud group (thus yielding an offense level of 24 under

that grouping), Omar's adjusted offense level would have remained a 26 under the Money Laundering group. Under the Sentencing Guidelines, we apply the higher offense level to calculate the appropriate Guidelines range for both groups of convictions. See U.S.S.G. §3D1.3(a). Thus, if the district court committed an error in applying the enhancement, a question we do not reach, that error would be harmless. Harmless errors are not subject to reversal. See United States v. Vickers, 528 F.3d 1116, 1120 (8th Cir. 2008) ("A non-harmless error in calculating the guidelines range requires a remand for resentencing."); United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005) ("[T]here may be situations where an error in calculating the appropriate guidelines range is harmless and, therefore, does not require immediate remand.") (citing Williams v. United States, 503 U.S. 193, 203 (1992)).

Next, we address the argument that the district court failed to consider all of the section 3553(a) factors, including the nature and circumstances of the offense, Omar's history and characteristics, and what sentence was needed for adequate deterrence and protection of the public. In sentencing, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances," and "[t]he law leaves much, in this respect, to the judge's own professional judgment." Rita v. United States, 127 S. Ct. 2456, 2468 (2007). Although brief, the district court discussed the nature and circumstances of the offense and explained that the amount of loss was "extremely large" and that the "fraud scheme went on over a period of years." The court referred to Omar's unwillingness to accept responsibility for her actions either before or during trial, and the court addressed Omar's "attempt to manipulate the testimony of witnesses." The court also noted that the sentence imposed needed "to protect the public from future fraudulent activities on the part of the defendant." Finally, the court addressed Omar's "health issues" and remarked that Omar "will continue to have access to the required medical treatment once she is in the custody of the Bureau of Prisons." The court recommended that Omar be placed in a facility that could treat her medical conditions. The sentencing transcript shows

that the district court considered the section 3553(a) factors and specifically addressed the factors Omar now claims were not considered.  We conclude that the sentencing hearing was sufficient to meet the procedural requirements of <u>Gall</u>.

We also find that Omar's sentence is not substantively unreasonable.  We may find an abuse of discretion where the sentencing court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors."  <u>United States v. Kowal</u>, 527 F.3d 741, 749 (8th Cir.), <u>cert. denied</u>, 129 S. Ct. 612 (2008) (quotation omitted).  We may treat a sentence within the Sentencing Guidelines range as presumptively reasonable.  <u>See</u> <u>United States v. Torres</u>, 552 F.3d 743, 747-48 (8th Cir. 2009).  Omar's 72-month sentence is in the middle of the Guidelines range, and her arguments for why she should have received a below-Guidelines sentence are not compelling enough to overcome this presumption.  The district court did not abuse its discretion in imposing the sentence.  <u>See</u> <u>Gall</u>, 128 S. Ct. at 594.

III.

Accordingly, we affirm Omar's sentence.

_____