# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2650

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Bradley Shane McCorkle, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 15, 2012
Filed: July 31, 2012

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HICKEY,[1] District Judge.

_____

HICKEY, District Judge.

Bradley McCorkle appeals his conviction for theft of government funds, in violation of 18 U.S.C. § 641. On appeal, McCorkle contends that the district court[2] abused its discretion by admitting evidence at trial of his prior applications for Social Security disability benefits. He also argues for the first time on appeal that venue was

_____

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

not proper in the Southern District of Iowa. For the following reasons, we reject these arguments and affirm the conviction.

## I.

Bradley McCorkle's mother, Ada McCorkle, died on August 11, 2008. At the time of her death, she was receiving Social Security disability benefits totaling $1,587 per month. Unaware of Ada McCorkle's death, the Social Security Administration ("SSA") continued to deposit benefits into her Illinois bank account. As the executor of his mother's estate, Bradley McCorkle had access to his mother's bank account and continued to accept and withdraw these post-death Social Security benefits. He made no effort to inform SSA of her death. In July 2009, Ada McCorkle's estate attorney requested a freeze of her bank account, which led the bank to discover that Social Security benefits had continued to be deposited after her death. The bank then returned the outstanding deposits to SSA and issued stop payment orders on three cashier's checks Bradley McCorkle purchased using benefit funds. McCorkle attempted to cash one of the checks at an Illinois bank. The bank refused to cash the check, retained it, and informed McCorkle that any outstanding cashier's checks in his possession should be returned to the bank. Undeterred, McCorkle then traveled to a bank in Iowa where he successfully cashed the two remaining checks. Over the course of fourteen months following his mother's death, McCorkle withdrew approximately $16,000 in post-death Social Security benefits from his mother's bank account.

On August 18, 2010, a grand jury sitting in the Southern District of Iowa issued a one-count indictment against McCorkle for theft of government funds, in violation of 18 U.S.C. § 641. The government moved to admit evidence of McCorkle's prior applications for Social Security disability benefits on behalf of himself in 1994 and his daughter in 2000. The government argued that the applications were relevant to whether McCorkle knew both that SSA must be informed when a beneficiary dies and

that SSA does not make disability benefit payments to a deceased beneficiary. McCorkle objected to the admission on the grounds that such evidence would be prejudicial, confusing to the jury, or would result in the trial of collateral matters. The district court agreed with the government's position and admitted the evidence, finding it relevant and not overly prejudicial.

At trial, the government introduced the evidence of the prior applications, and SSA employees testified that when an individual applies for disability benefits on behalf of themselves or another, SSA explicitly informs them of their obligation to inform SSA of the death of a beneficiary. The witnesses also testified that McCorkle would have been provided hard copies of the reporting requirements at the time of application and that the requirements were in place in 2000 when McCorkle applied for benefits on behalf of his daughter. A government witness further testified that McCorkle admitted in conversations that he knew he was not entitled to the funds. However, McCorkle testified that he believed he was entitled to receive the funds and that it was not until his mother's estate attorney requested a freeze on her account that he learned of the SSA's policy of ceasing payments to beneficiaries upon their death. On March 11, 2011, a jury returned a guilty verdict. On July 15, 2011, the district court sentenced McCorkle to six-months' imprisonment with a three-year term of supervised release.

II.

A.

McCorkle first argues that the district court improperly admitted evidence of his prior applications for disability benefits. "A district court enjoys wide discretion in ruling on the admissibility of proffered evidence, and evidentiary rulings should only be overturned if there was a clear and prejudicial abuse of discretion." *United States v. Augustine*, 663 F.3d 367, 372 (8th Cir. 2011) (citations and internal quotation marks omitted).

McCorkle maintains that his prior applications for disability benefits should have been excluded as evidence because they are irrelevant and highly prejudicial. Specifically, he argues that the applications are irrelevant because they do not tend to prove an element of the offense for which he was convicted.

All relevant evidence is admissible, with certain exceptions. Fed. R. Evid. 402. Federal Rule of Evidence 401 characterizes evidence as relevant if "it has *any* tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). In determining the relevancy of the evidence at issue in this case, we first look to what elements must be proven under the statute of conviction. Under 18 U.S.C. § 641, the government must establish beyond a reasonable doubt that McCorkle intended to deprive the United States of its property.[3] *United States v. Rehak*, 589 F.3d 965, 973 (8th Cir. 2009). Accordingly, evidence of whether McCorkle had knowledge of the fact that he was not entitled to the benefits paid to his mother's account following her death would be necessary to establish the element of intent found in 18 U.S.C. § 641.

At trial, the government submitted evidence of McCorkle's prior applications along with witness testimony establishing that disability claimants who apply for benefits are advised of SSA policies and requirements related to the death of beneficiaries. The government maintains that this evidence tends to show that,

---

[3]To obtain a conviction at trial for theft of government property, the government must prove beyond a reasonable doubt that the defendant (1) voluntarily, intentionally, and knowingly stole or converted money to his own use or to the use of another; (2) acted with the intent to deprive the owner of the use or benefit of the money so taken; and (3) the money belonged to the United States and had a value in excess of one thousand dollars ($1,000). *See* 18 U.S.C. § 641; *United States v. Rehak*, 589 F.3d 965, 973 (8th Cir. 2009); Eighth Circuit Model Jury Instructions (Criminal) § 6.18.641 (2011).

because McCorkle had applied for Social Security benefits on several occasions, he was familiar with SSA policies and knew that he was not entitled to benefits paid after his mother's death. We agree. This evidence directly refutes McCorkle's position that he lacked knowledge of the illegality of his actions and did not intend to steal government property. For this reason, we find the evidence of prior applications to be highly relevant.

McCorkle further argues that even if evidence of his prior applications for benefits was relevant, the district court should have excluded it because it was highly prejudicial and served as impermissible propensity evidence. Specifically, McCorkle asserts that admitting the applications allowed the jury to infer that his unsuccessful past attempts to acquire disability benefits made it more likely that he would unlawfully withdraw payments made to his deceased mother. We disagree.

Federal Rule of Evidence 403 grants a district court the authority to exclude relevant evidence only "if its probative value is *substantially* outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403 (emphasis added). In this case, the government did not seek testimony or present evidence concerning the merits of McCorkle's prior applications or whether he was disabled or otherwise entitled to benefits. Therefore, there is nothing in the record to indicate that the government attempted to portray McCorkle's prior applications as attempts to abuse the Social Security system. Rather, it appears that the evidence was narrowly proffered and admitted only to refute McCorkle's claim that he lacked knowledge and intent to deprive the government of property. Because McCorkle's intent and knowledge were directly at issue, we find no abuse of discretion on the part of the district court in admitting evidence of McCorkle's previous applications for Social Security disability benefits. While the jury might have inferred that McCorkle's previous applications had been denied and that he was wrongly applying for benefits he was not entitled to, this potential inference does not rise to the level of unfair prejudice that would

substantially outweigh the probative value of the evidence of prior applications. Accordingly, we find that the district court did not abuse its discretion in admitting this evidence.

## B.

Next, McCorkle argues for the first time on appeal that the trial venue was improper. McCorkle contends that, because he initially withdrew the disability funds and obtained the cashier's checks from his mother's bank in Illinois, venue in the Southern District of Iowa was improper. The government maintains that venue in Iowa was proper because the crime was continued and completed in Iowa where McCorkle cashed the two remaining cashiers checks in his possession. The government also argues, in the alternative, that McCorkle has waived his right to object to venue because he failed to object on this basis before trial, during trial, or at the conclusion of trial.

McCorkle concedes that he did not move for a change of venue or object to venue before, during, or at the conclusion of trial. However, he maintains that he did not waive his right to object to venue but merely forfeited it. The distinction is crucial. Waiver is a defendant's "intentional relinquishment or abandonment of a known right[,]" while forfeiture is a "failure to make the timely assertion of a right." *United States v. Olano*, 507 U.S. 725, 733 (1993). In the context of appellate review, forfeited claims are entitled to plain-error review, while waived claims are entirely unreviewable. *United States v. Booker*, 576 F.3d 506, 511 (8th Cir. 2009).

In this case, we find no evidence in the record that McCorkle expressly or intentionally abandoned his right to object to venue. Rather, it appears that his failure to raise such an objection was inadvertent. This type of unintentional oversight is more consistent with forfeiture. Accordingly, we will review McCorkle's venue

challenge for plain error. "To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error, the error is clear or obvious under current law, the error affected the party's substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011).

Under 18 U.S.C. § 3237(a), "any offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which it was begun, continued, or completed." McCorkle argues that the theft of government funds was complete at the moment he purchased the cashier's checks at the bank in Illinois because these were guaranteed funds withdrawn from his mother's account at the time of purchase. McCorkle maintains that cashing the two checks in Iowa was not a continuation or completion of the crime, therefore, no part of the offense took place in Iowa.

While the initial withdrawals of Social Security funds from his mother's account were effected at the time each cashier's check was issued, this fact does not support the conclusion that McCorkle's crime did not continue into Iowa. Conviction under 18 U.S.C. § 641 requires that an individual knowingly convert government funds to his own use. The conversion of these checks into cash at the bank in Iowa for McCorkle's use was clearly a continuation and completion of the conversion that began with the withdrawal of the Social Security funds in Illinois. For this reason, we find no plain error in prosecuting this case in the Southern District of Iowa.

III.

The judgment of the district court is affirmed.

_____