# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1592

_____

United States of America

*Plaintiff - Appellee*

v.

Santonio Omar Parker

*Defendant - Appellant*

_____

No. 13-1714

_____

United States of America

*Plaintiff - Appellant*

v.

Santonio Omar Parker

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: April 18, 2014
Filed: August 11, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

More than four years have passed since <u>King v. United States</u>, 595 F.3d 844, 849-52 (8th Cir. 2010), noted a problematic ambiguity in the career offender provision of the United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 4B1.2(c). The Sentencing Commission has taken no action to resolve the ambiguity, so once again we face an unsavory choice between two imperfect interpretations of this Guidelines provision. On the one hand, the government's interpretation—which makes the most policy sense—would require us to ignore the rule of lenity and a fair reading of the provision's text. On the other, the defendant Santonio Parker's interpretation—which accords with the rule of lenity and the plain text—leads to a result the Sixth Circuit recently condemned, <u>see</u> <u>United States v. Williams</u>, ___ F.3d ___, ___, No. 12-2108, 2014 WL 2446114, at *10-11 (6th Cir. June 2, 2014).

Despite our respect for the Sixth Circuit, we do not consider it our court's role in interpreting criminal statutes or the Guidelines to err on the side of the government, much less to make policy decisions entrusted to Congress and the Sentencing Commission. As in <u>King</u>, the ambiguity in this case must benefit the defendant. <u>See</u> <u>King</u>, 595 F.3d at 852. At the same time, we reaffirm that a district court may fully account for a defendant's criminal history under 18 U.S.C. § 3553(a) even if the Guidelines provision's ambiguity masks the defendant's status as a career offender.

That is exactly what the district court[1] did in this case, correctly calculating a 37 to 46-month Guidelines range and then varying upward to 84 months in prison. We therefore reject the arguments in both the government's appeal (asserting the sentence was too short) and Parker's appeal (asserting the sentence was too long), and affirm the district court's carefully considered sentencing decision.

## I.    BACKGROUND

Shortly after Congress passed the Fair Sentencing Act of 2010 (Act), Pub. L. No. 111–220, 124 Stat. 2372 (codified in scattered sections of 21 U.S.C.), Santonio Parker received a 100-month prison sentence for distributing cocaine base and possessing at least five grams of cocaine base with intent to distribute, see 21 U.S.C. § 841(a). At this initial sentencing, the district court determined over the government's objection that Parker was not a career offender under U.S.S.G. § 4B1.1(a). The career offender provision requires "at least two prior felony convictions of either a crime of violence or a controlled substance offense." Id. Parker concededly had one prior "crime of violence," and the government pointed to his 2005 Missouri conviction for violently or forcefully resisting arrest as the second. Parker's four-year prison sentence for this conviction was imposed on the same day (January 12, 2005) as a consecutive seven-year prison sentence for a non-qualifying offense. Relying on King, the district court concluded the resisting arrest conviction did not qualify as a career offender predicate because it had to be aggregated with the non-qualifying sentence. The government initially filed a notice of appeal, but then abandoned its challenge to the district court's career offender decision. We granted the government's motion to dismiss its appeal.

Nearly two years after Parker's initial sentencing, the Supreme Court extended the Act's lowered penalties for cocaine base offenses to every defendant, like Parker,

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

sentenced after the Act's effective date.  See Dorsey v. United States, 567 U.S. ___, ___, 132 S. Ct. 2321, 2326 (2012).  Parker moved to vacate his sentence pursuant to 28 U.S.C. § 2255(a), and the government agreed Dorsey entitled him to resentencing. The district court granted the motion and vacated Parker's original sentence.

At resentencing, the government revived its theory that Parker qualified for the career offender enhancement.  Once again citing King, the district court stood by its "ruling . . . at the original sentencing."  After calculating an advisory Guidelines range of 37 to 46 months in prison, the district court denied Parker's request for a downward variance based on his positive post-sentencing conduct and partially granted the government's request for an upward variance.  Considering the 18 U.S.C. § 3553(a) factors, the district court found Parker's "violent" criminal history was underrepresented.  If not for Parker's non-qualifying 2005 conviction and the ambiguity in U.S.S.G. § 4B1.2(c), the district court explained, Parker "would be . . . looking at 188 months" in prison under the Guidelines.  After weighing the § 3553(a) factors, the district court determined "a sentence of 84 months satisfies the statutory purposes of sentencing."

Both Parker and the government appeal.[2]  We have appellate jurisdiction under 28 U.S.C. § 1291.

## II.    DISCUSSION

We review the sentence under Gall's familiar abuse of discretion standard, see United States v. Gall, 552 U.S. 38, 51 (2007).  "We begin by 'ensur[ing] that the district court committed no significant procedural error.'" United States v. Scott, 732 F.3d 910, 917-18 (8th Cir. 2013) (alteration in original) (quoting Gall, 552 U.S. at

---

[2]Parker also moves to dismiss the government's appeal on the theory that "the government has clearly waived their [sic] right to have th[e criminal offender] issue litigated."  Parker's motion does not implicate our jurisdiction, so we choose to reject the government's appeal on the merits and dismiss the motion as moot.

51). Miscalculating the Guidelines range is a "significant procedural error," <u>Gall</u>, 552 U.S. at 51, and "[w]e review the district court's interpretation and application of the guidelines *de novo*," <u>United States v. Bates</u>, 584 F.3d 1105, 1108 (8th Cir. 2009). "Once assured the sentence is 'procedurally sound,' we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard[,] . . . . tak[ing] into account the totality of the circumstances.'" <u>Scott</u>, 732 F.3d at 918 (alterations and omission in original) (quoting <u>Gall</u>, 552 U.S. at 51).

## A.   Government's Appeal

According to the government, the district court procedurally erred in its Guidelines calculation by disqualifying Parker for the career offender enhancement, <u>see</u> U.S.S.G. § 4B1.1(a). According to Parker, the district court correctly applied our precedent, construing the career offender provision's ambiguity against the government as required by the rule of lenity. We agree with Parker.

### 1.   Law of the Case

Before turning to the merits of the government's current appeal, we must first explain why the government's failure to prosecute its earlier appeal does not make the district court's initial career offender determination "law of the case."[3]

The "law of the case" doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983). When a defendant's "entire sentence" is "set aside" and the defendant receives "a *de novo*

_____

[3]Parker incorrectly frames this issue as one of "waiver." The issue would be *waived* only if the government affirmatively agreed at resentencing that Parker was not a career offender and *forfeited* only if the government failed to preserve its theory at resentencing. <u>See</u>, <u>e.g.</u>, <u>United States v. McCorkle</u>, 688 F.3d 518, 522 (8th Cir. 2012). Neither term describes the situation here. At resentencing, the government fully preserved its position that Parker should be sentenced as a career offender.

resentencing," the doctrine does not apply to the resentencing. Pepper v. United States, 562 U.S. ___, ___, 131 S. Ct. 1229, 1251 (2011). "Because a district court's original sentencing intent may be undermined by altering one portion of the calculus," a district court proceeding under § 2255 "may vacate the entire sentence . . . so that the [district] court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." Id. (internal quotations and alterations omitted).

Law of the case thus has no role to play here. Parker's § 2255 motion requested "that his sentence be *vacated* and he be *resentenced* in light of Dorsey." (Emphasis added). The district court, by granting that motion, "effectively wiped the slate clean." Id. Although the district court vacated Parker's sentence "on grounds unrelated to the" career offender issue, "that fact does not affect our conclusion." Id. Parker received a plenary resentencing, so the district court "was not bound by the law of the case doctrine to apply the" career criminal offender decision "that had been applied at" Parker's "prior sentencing." Id.

### 2. Rule of Lenity

Although the "law of the case" doctrine does not stand in the government's way, the rule of lenity presents an insurmountable hurdle.

The "venerable rule" of lenity flows in large part from "the fundamental principle that no citizen should be . . . subjected to punishment that is not clearly prescribed." United States v. Santos, 553 U.S. 507, 514 (2008). If "an ambiguous section of the Sentencing Guidelines may be given either of two plausible readings," we must resolve the ambiguity in the defendant's favor. United States v. Rodriguez-Arreola, 313 F.3d 1064, 1067 (8th Cir. 2002). This "canon of strict construction" has constitutional underpinnings in both the accused's Fifth Amendment right to due process and the legislative branch's exclusive Article I "power to define crimes and their punishment." United States v. Lanier, 520 U.S. 259, 265 & n.5, 266 (1997). "It

is founded on the tenderness of the law for the rights of individuals," and "is perhaps not much less old than construction itself." United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.).

As we explained in King, 595 F.3d at 850-51, there is a critical ambiguity in the career offender enhancement's method of counting companion sentences. To be a career offender, a defendant must have "two prior felony convictions," U.S.S.G. § 4B1.1(a), which requires that "the sentences for at least two [prior] felony convictions [be] counted separately under the provisions of §[ ]4A1.1(a), (b), or (c)." Id. § 4B1.2(c). The first step is to "determine whether [prior] sentences are counted separately or as a single sentence." Id. § 4A1.2(a)(2). "If there is no intervening arrest" and "the sentences were imposed on the same day," the sentences cannot be counted "separately" but must be counted "as a single sentence." Id.

Parker's qualifying resisting arrest conviction must be counted as a "single sentence" together with the non-qualifying companion conviction "imposed on the same day," as follows:

> For purposes of applying §[ ]4A1.1(a), (b), and (c), if prior sentences are counted as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment.

Id. Because "consecutive sentences were imposed" for Parker's qualifying and non-qualifying companion offenses, the district court must "use the aggregate sentence of imprisonment." Id. This means Parker's four-year qualifying prison sentence and seven-year non-qualifying prison sentence become a single eleven-year prison sentence, which is counted under § 4A1.1(a) because it "exceed[s] one year and one month."

With only this aggregated single sentence counting "under the provisions of §[ ]4A1.1(a), (b), or (c)," it is unclear whether Parker's underlying resisting arrest sentence "counted separately" from the non-qualifying sentence under any of those subsections. Id. § 4B1.2(c). If not, then Parker does not have "two prior felony convictions" within the meaning of § 4B1.2(c). Even if the district court added an additional point for the resisting arrest conviction under § 4A1.1(e), a separate point given under subsection (e) does not count for the career offender enhancement. See id. § 4B1.2(c) (counting only points given for separate sentences under "§[ ]4A1.1*(a), (b), or (c)*" (emphasis added)).

Parker's view is that the qualifying sentence did not receive criminal history points at all because the points under § 4A1.1(a) were assigned solely to an aggregated single sentence. Without adding the four-year sentence from the qualifying offense, the seven-year sentence from the non-qualifying offense was already long enough to receive the maximum number of points under § 4A1.1(a). Noting the qualifying offense did not separately add even a single point under § 4A1.1(a), (b), or (c), as necessary for § 4B1.2(c) to apply, Parker maintains he is not a career offender.

In King, we decided "[a]fter considerable study" that Parker's reading "is consistent with the language of §§ 4B1.2(c) and 4A1.2(a)(2) and also finds support in the structure of § 4A1.1." King, 595 F.3d at 850. We again recognized "that 'where prior convictions . . . are to be treated as one sentence for purposes of section 4A1.1(a)-(c), it is not clear whether the individual convictions receive criminal history points.'" Id. (quoting United States v. Ruhaak, 49 F. App'x 656, 657 (8th Cir. 2002) (unpublished per curiam)). Our decision in United States v. Peters, 215 F.3d 861 (8th Cir. 2000), also supports Parker's reading. There, we recognized that if a non-qualifying offense receives the maximum "three criminal history points under section 4A1.1(a)," then companion qualifying offenses will "not receive criminal

history points under section 4A1.1(a), (b), or (c)" and thus will "not [qualify as] 'prior felonies' within the meaning of the guidelines." Id. at 863.

The government offers a different reading. Theorizing that the qualifying sentence "constituted part of the calculation that determined the number of criminal history points assigned under § 4A1.1," the government insists "Parker's 2005 Resisting Arrest felony was counted under § 4A1.1(a) and, therefore, qualifies as a predicate felony under § 4B1.1." In Williams, the Sixth Circuit embraced the government's theory and declared there was "no ambiguity." Williams, ___ F.3d at ___, 2014 WL 2446114, at *10. Of course, we previously rejected the government's theory in King, so we could not agree with the Sixth Circuit even if Williams persuaded our panel. See, e.g., United States v. Sun Bear, 307 F.3d 747, 753 (8th Cir. 2002).

Attempting to distinguish King, the government emphasizes that case involved concurrent sentences. But King's logic is equally applicable to consecutive sentences like Parker's. Compare the following examples, each involving companion qualifying and non-qualifying convictions:

1. Defendant A receives identical *concurrent* sentences—the situation in King. Because it is impossible to say which conviction receives separate points under § 4A1.1(a)-(c), lenity applies and the qualifying conviction does not count. See King, 595 F.3d at 852.

2. Defendant B receives a longer *concurrent* sentence on the qualifying felony. Under § 4A1.2(a)(2), only the longer qualifying felony sentence would be counted under § 4A1.1(a)-(c). Thus, the qualifying felony would be "separately" counted because the non-qualifying felony is ignored for the purposes of § 4A1.1(a)-(c).

3. Defendant C receives a *consecutive* sentence on the qualifying felony but the non-qualifying sentence alone is long enough to earn as many points as the two sentences combined—the situation here. Under § 4A1.2(a)(2), the sentences for both convictions are aggregated, meaning the qualifying felony sentence is not "counted separately" from the non-qualifying sentence under § 4A1.1(a)-(c).

These examples show that if the sentences are concurrent, it is possible for the qualifying felony to count separately from the non-qualifying felony: the longer sentence alone receives points under § 4A1.1(a)-(c). But if the qualifying and non-qualifying sentences are consecutive and the non-qualifying sentence is long enough to earn as many points under § 4A1.1(a)-(c) as the entire "aggregate sentence," it is unclear whether the underlying qualifying offense receives any points of its own under those subsections. See U.S.S.G. § 4A1.2(a)(2); King, 595 F.3d at 850.

In King, we found "[i]mplicit in [§ 4A1.1(e)] the core premise of" Parker's "argument—that not every offense within a group of related prior sentences necessarily 'receive[s]' the points ascribed to the group under subsections (a)-(c)." King, 595 F.3d at 850 (third alteration in original). Subsection (e) instructs the district court to "[a]dd **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) . . . because such sentence was counted as a single sentence." U.S.S.G. § 4A1.1(e); see, e.g., United States v. Tolbert, No. 13-1972, 2014 WL 1929483, at *3 (7th Cir. May 15, 2014) (unpublished per curiam order) ("The purpose of § 4A1.1(e) is to add criminal history points for crimes of violence that are not counted under § 4A1.1(a), (b), or (c)"). Subsection (e) expressly recognizes that an aggregated crime of violence may not "receive any points under (a), (b), or (c)." U.S.S.G. § 4A1.1(e). According to Parker, that is exactly what happened in this case: his resisting arrest sentence was part of a "single sentence," id., long enough to earn the maximum points under § 4A1.1(a) even without adding his qualifying sentence. Therefore, the underlying

sentence did not count separately from the non-qualifying offense by "receiv[ing] any points under (a), (b), or (c)," id. See U.S.S.G. § 4A1.1(a); King, 595 F.3d at 850.

Parker's "reading of the guidelines is plausible." King, 595 F.3d at 850. The rule of lenity therefore compels us to give him the benefit of his reading. See United States v. Oetken, 241 F.3d 1057, 1060 (8th Cir. 2001).

### 3. Policy

Despite the rule of lenity, the government protests that accepting Parker's plausible reading of the career offender guidelines leads to the perverse result that some defendants may evade the career offender enhancement by committing more crime—so long as the extra crime does not qualify and results in a consecutive sentence. We recognize and share the government's concern. But in the words of Justice Cardozo, a judge "is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness." Benjamin N. Cardozo, The Nature of the Judicial Process 141 (1921). As appellate judges, we must follow the law, not make categorical sentencing policy decisions reserved for Congress and the Sentencing Commission.

The rule of lenity requires us to err on the side of the comparatively powerless defendant, not the government—"'the richest, most powerful, and best represented litigant to appear before us.'" Greenlaw v. United States, 554 U.S. 237, 244 (2008) (quoting United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987) (R.S. Arnold, J., concurring in denial of reh'g en banc)).

We cannot join the Sixth Circuit in brushing aside a real ambiguity in the career offender provision. Seeking to avoid what it termed a "ridiculous result," the Sixth Circuit decided with little analysis that "§ 4B1.2 says nothing regarding the scoring of multiple crimes within a single predicate episode." Williams, ___ F.3d at ___, 2014 WL 2446114, at *10-11. That reading may be plausible. But as we

-11-

explained "[a]fter considerable study," it is not the only plausible reading consistent with § 4B1.2's text, structure, and purpose. <u>King</u>, 595 F.3d at 850.

The Sixth Circuit's other criticisms of <u>King</u> are similarly unpersuasive. <u>Williams</u> directs the reader's attention to an obvious and undisputed point: "Each of [the defendant's] convictions, including his [qualifying] conviction . . . , *independently* supports the assessment of criminal history points under § 4A1.1(a), (b), or (c)," <u>Williams</u>, ___ F.3d at ___, 2014 WL 2446114, at *10 (emphasis added). Next sentence, <u>Williams</u> changes direction, saying, "Section 4B1.2 requires no more." <u>Id.</u> What this change misses is the unambiguous text of § 4B1.2, which does require more. It is not enough that a conviction *could* independently (i.e., in the absence of companion convictions) count under § 4A1.1(a)-(c). The conviction must *actually* count. <u>See</u> U.S.S.G. § 4B1.2(c) (allowing the enhancement only if "the sentences . . . *are* counted separately" (emphasis added)).

The Sixth Circuit then observes that a district court "calculating [a defendant's] criminal history category . . . would never conclude that simply because neither [companion] sentence" is clearly counted separately by § 4A1.1(a)-(c), a defendant "should be assessed no criminal history points at all." <u>Williams</u>, ___ F.3d at ___, 2014 WL 2446114, at *10. The inapplicability of that observation—relating to the entirely different issue of the criminal history calculation—is self-evident. "Certainly all felonies are 'counted' in the sense that they are subject to the rules for calculating criminal history." <u>King</u>, 595 F.3d at 851. As we explained in <u>King</u>, "the relevant question here is *how* a felony is counted within that framework—specifically, whether it receives points under § 4A1.1(a), (b), or (c). Section 4A1.1 presumes, and our precedent recognizes, that some crimes will not be counted under one of those subsections." <u>Id.</u>; <u>see</u> <u>also</u>, e.g., <u>Tolbert</u>, 2014 WL 1929483, at *3 (citing <u>King</u>, 595 F.3d at 850).

Williams further criticizes our King decision as "nonsensical." Williams, ___ F.3d at ___, 2014 WL 2446114, at *10. Given the analytic disparity between King and Williams, it suffices to note that the King defendant's "relatively sophisticated argument" made sense to our experienced King panel. King, 595 F.3d at 847.

Neither today's decision nor our decision in King endorses the idea that a defendant should, as a policy matter, "evade career offender status because he committed *more* crimes than the qualifying offense," Williams, ___ F.3d at ___, 2014 WL 2446114, at *11. To the contrary, we encourage the Sentencing Commission to resolve the ambiguity in § 4B1.2(c) by clarifying "what prior offenses count within the specific rules of the guidelines."[4] King, 595 F.3d at 852. But until the Sentencing Commission (or Congress) does so, we must adhere to "our deeply rooted tradition in the realm of criminal law . . . to apply the law strictly as written." Id. Our justice system rests on a foundation of fair notice. Even at the cost of allowing some criminals to receive a shorter sentence, we firmly reject "the practice of Caligula, who reportedly 'wrote his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people.'" Flores-Figueroa v. United States, 556 U.S. 646, 658 (2009) (Scalia, J., concurring) (quoting 1 William Blackstone, Commentaries *46). As Judge Richard S. Arnold wrote, "This country is built on the assumption that the cost is worth paying, and that in the long run we are all both freer and safer if the Constitution is strictly enforced." Williams v. Nix, 700 F.2d 1164, 1173 (8th Cir. 1983), rev'd on other grounds, 467 U.S. 431 (1984).

---

[4]It seems that amending § 4B1.2(c) by deleting "separately" and including felonies counted under § 4A1.1(e) would be consistent with the Sentencing Commission's statutory obligation to "assure that the guidelines specify a sentence . . . at or near the maximum term authorized for" offenders with "two or more prior [violent or controlled substance] felonies." 28 U.S.C. § 994(h). A separateness requirement appears nowhere in § 994(h). Cf. id. § 994(i)(1) (specifying "offenses committed on different occasions").

### 4. Harmless Error

In this case, however, our strict adherence to the rule of law does not cost the public a just sentence. Unlike a criminal statute, the Guidelines are not mandatory. See United States v. Booker, 543 U.S. 220, 245 (2005). Indeed, it would be procedural error for a district court to treat the Guidelines as mandatory or presumptively reasonable. See, e.g., Peugh v. United States, 569 U.S. ___, ___, 133 S. Ct. 2072, 2080 (2013). Applied to the problematic ambiguity in § 4B1.2(c), the rule of lenity merely requires the district court to calculate the advisory sentencing range in the way that benefits the defendant. The rule does not require the district court to ignore the crimes of violence which § 4B1.2(c)'s ambiguity excludes from the career offender enhancement. Having correctly calculated and considered the advisory Guidelines range, the district court's independent obligation—regardless of ambiguity in the Guidelines—is to impose a just and appropriate sentence based on a careful weighing of the § 3553(a) factors in each individual case. See, e.g., id.; Booker, 543 U.S. at 245. The district court properly did so in Parker's case.

As the government affirmatively concedes, "A review of the entire record clearly reveals that the district court imposed the *most appropriate* sentence in this case based upon the *facts* before it." (Emphasis added). The record amply supports the government's concession. While resolving the Guidelines ambiguity in Parker's favor, the district court explained "the sentencing guidelines in this case did not adequately take into consideration some factors," and Parker's "criminal history really wasn't fully captured by the way the guidelines were working in this case." Rejecting the Guidelines range as inapplicable to Parker's unique situation, the district court acknowledged "sentencing is not about mathematics." The district court also chided Parker's counsel for "assuming that [the court's] reasoning would be different if the guideline range was different for the . . . offense."

Given the government's concession, we doubt we could offer the government relief even if the district court had technically erred in its analysis of § 4B1.2(c).

-14-

"Harmless errors are not subject to reversal." United States v. Omar, 567 F.3d 362, 366 (8th Cir. 2009). The district court in this case plainly understood the ambiguity in § 4B1.2(c) led to an advisory range inconsistent with Parker's actual criminal history, so the district court sentenced Parker well above that range. In fact, Parker believes "the district court essentially sentenced him as a career offender." The Supreme Court has instructed us not to "'sally forth' . . . to take up errors adverse to the Government," Greenlaw, 554 U.S. at 246, when the government effectively concedes the error is harmless, and the defendant apparently agrees. The record provides "assurance that the district judge . . . specifically contemplated the possible error" and "whether a different advisory guideline range would affect the choice of a sentence." United States v. Henson, 550 F.3d 739, 742 (8th Cir. 2008). Based on that analysis and all the "facts," including Parker's entire criminal history, as the government says, "the district court imposed the most appropriate sentence."

## B.    Parker's Appeal

Although Parker agrees with the district court's Guidelines calculation, he contends the district court committed a different procedural error and imposed an unreasonably long sentence. We detect no error.

First, Parker asserts the district court procedurally erred because it "did not adequately explain if it was imposing a departure or a variance" and "failed to properly go through the necessary steps when apparently making an upward departure." Parker is doubly wrong. The district court extensively discussed the need for an upward variance and departure in the case, explaining Parker's criminal history was understated "given the unique facts of this case" and an upward departure and variance were needed "to honor the congressional mandate under 18 [U.S.C. §] 3553(a)." The district court, in response to a direct question from government counsel, clearly specified it was imposing an upward departure and variance. The district court's explanation was careful and thorough, not procedurally erroneous. See, e.g., United States v. Richart, 662 F.3d 1037, 1048 (8th Cir. 2011).

-15-

Second, Parker claims the sentence of 84 months is substantively unreasonable because "the district court failed to give significant weight to [his] postsentencing rehabilitation evidence" and "essentially sentenced him as a career offender." Parker is mistaken. Despite Parker's post-sentencing conduct and the Guidelines ambiguity, the district court remained "deeply disturbed by the violent nature of [Parker's] criminal history" and "lack of respect for the law." Although Pepper clarified "a district court *may* consider evidence of a defendant's rehabilitation since his prior sentencing," nothing in Pepper requires a district court to reduce—or increase—a sentence based on such evidence. Pepper, 562 U.S. at ___, 131 S. Ct. at 1241 (emphasis added). The sentencing judge's responsibility is always to fashion a punishment particular to each defendant, recognizing "the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

The § 3553(a) factors and the sentencing judge's traditional discretion authorized the district court to account for Parker's underlying criminal history despite the ambiguity of the career offender provision. Unlike appellate judges whose role in the sentencing process is limited, district judges may consider policy questions when sentencing individual defendants. District courts must use the Guidelines as "the starting point and the initial benchmark," Gall, 552 U.S. at 49, and "take account of sentencing practices in other courts," Kimbrough v. United States, 552 U.S. 85, 108 (2007). But, as we learned in a summary reversal, "district courts are entitled to reject and vary categorically from" at least some of the "Guidelines based on a policy disagreement with those Guidelines." Spears v. United States, 555 U.S. 261, 265-66 (2009) (per curiam). Given the congressional policy expressed in 28 U.S.C. § 994(h) and the seemingly counterintuitive result of § 4B1.2(c)'s ambiguity, it is clear the district court did not err in fully accounting for Parker's understated criminal history.

"Where [a] district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." United States v. Stults, 575 F.3d 834, 849 (8th Cir. 2009) (quoting Gall, 552 U.S. at 50). Parker's sentence is not unreasonable.

## III.   CONCLUSION

In this complex sentencing case, the district court answered every legal question correctly, imposing a procedurally sound and substantively reasonable sentence. We affirm the district court's well-reasoned sentencing decisions.

BENTON, Circuit Judge, concurring.

I concur in the court's opinion in all respects but one: § 4A1.1(e) has no relevance in this case.

The court states, "Subsection (e) expressly recognizes that an aggregated crime of violence may not 'receive any points under (a), (b), or (c).'" This is true, but subsection (e) is not relevant to Parker, whose sentence for a qualifying (violent) crime is aggregated with a sentence for a non-qualifying (non-violent) crime. As the Application Notes say, § 4A1.1(e) applies where "the defendant received two or more prior sentences as a result of convictions *for crimes of violence* that are counted as a single sentence." **U.S.S.G. § 4A1.1 cmt. n.5** (emphasis added). Section 4A1.1(e) applies only if the single sentence involves two or more qualifying crimes, not where a single qualifying crime is aggregated with non-qualifying crimes. **U.S.S.G. app. C, amendment 709** ("Instances may arise in which a single sentence comprises multiple prior sentences for crimes of violence. In such a case, §4A1.1(f) will apply.").

I realize the court is relying on dicta in *King*. *King*, 595 F.3d at 850 (Subsection (e) "supports the proposition that a potential career offender predicate can be subsumed within a group of convictions which includes a nonpredicate offense that received a longer sentence and therefore earned the designated criminal history point."). This dicta does not apply in a case like Parker's. The *King* sentences were ordered to run concurrently, not consecutively, and are analyzed under a different guidelines provision than Parker's. **King**, 595 F.3d at 849-50. The *King* decision itself recognizes this, calling a consecutive sentences case in the Fourth Circuit "inapposite." **King**, 595 F.3d at 851 n.4, *discussing* **United States v. Slade**, 346 Fed. Appx. 948 (4th Cir. 2009) (unpublished per curiam).

Relying on subsection (e), the court concludes that Parker's single sentence could plausibly not receive any points under subsections (a), (b), or (c). This conclusion is correct, not for the reason the court gives, but rather because the Guidelines do not define an "aggregate sentence."

The Guidelines generally use the word "aggregate" when referring to a quantitative total. *E.g.,* Notes to § 2D1.11 ("aggregate the quantities of all such chemicals"); Notes to § 2T1.1 ("the aggregate tax loss from the offenses added together"); Commentary to § 8C3.1 ("an aggregate maximum authorized fine of $1,500,000"). Here, the sentences to be aggregated have a quantitative aspect (their lengths), and a qualitative aspect (whether the conviction is for violent crime). Aggregation of quantitative lengths is simple addition. Aggregation of the qualitative aspects of violent and non-violent crimes is unclear. A court could classify the aggregate sentence as from a crime of violence if either component sentence is for a crime of violence (consistent with the government's view). Or, a court could classify the aggregate sentence as for a crime of violence if the longer component sentence is from a crime of violence (consistent with Parker's view).

Due to the rule of lenity, the court is required to adopt Parker's view that he did not receive points under subsections (a), (b), or (c)—without considering subsection (e).

I therefore concur.

_____