# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2631
_____

United States of America,

*Plaintiff - Appellee,*

v.

Deonte Ellison,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: March 17, 2023
Filed: June 29, 2023

_____

Before COLLOTON, MELLOY, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Deonte Ellison pleaded guilty to unlawful possession of ammunition as a felon. *See* 18 U.S.C. § 922(g)(1). The district court[*] sentenced him to 296 months and one

_____

[*]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

day of imprisonment. Ellison appeals his sentence, and we conclude that there is no reversible error.

This case arises from the killing of Curtis Smothers, Jr., in Dubuque, Iowa. On July 2, 2020, an argument between Ellison and Smothers escalated and resulted in a shooting. Ellison shot Smothers twice and killed him. The shooting occurred on a public sidewalk in a residential neighborhood next to a busy street. Ellison's wife, his two-year-old son, and Smothers's five-year-old daughter were present at the time of the shooting.

Ellison was convicted in Iowa state court of voluntary manslaughter and unlawful possession of a firearm as a felon. The state court sentenced him to ten years' imprisonment for voluntary manslaughter and five years for the gun charge.

In this federal case, Ellison pleaded guilty to one count of unlawful possession of ammunition by a felon. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). At sentencing, the district court concluded that Ellison qualified as an armed career criminal under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e)(1). As a result, because Ellison used his firearm in connection with a crime of violence, the court determined a base offense level of 34 under the sentencing guidelines. USSG § 4B1.4(b)(3). The court decreased the offense level by three for acceptance of responsibility, *id*. § 3E1.1, and arrived at a total offense level of 31. With a criminal history category VI, Ellison's advisory guideline range was 188 to 235 months' imprisonment.

The district court next granted the government's motion for an upward departure by two levels based on a resulting death and use of a weapon. *See* USSG §§ 5K2.1, 5K2.6. The departure resulted in a guideline range of 235 to 293 months' imprisonment. The court then varied upward by the equivalent of one more level based on 18 U.S.C. § 3553(a), because Ellison's criminal history category

-2-

substantially understated the likelihood of recidivism and the seriousness of his criminal history.

The court stated that without considering Ellison's previous sentence in state court, the court would have imposed a sentence of 320 months' imprisonment. But the court reduced the term by 729 days for time served on the state manslaughter conviction. *See* USSG § 5G1.3(b). The court then imposed a sentence of 296 months and one day of imprisonment.

Ellison first challenges his classification as an armed career criminal. Ellison did not object to this determination at sentencing, so we review for plain error. To establish plain error warranting relief, Ellison must show that the district court committed an obvious error that affected his substantial rights and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-36 (1993).

Under the ACCA, a felon who possesses a firearm is subject to a minimum sentence of fifteen years' imprisonment if he has three prior convictions for violent felonies or serious drug offenses "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The district court determined that Ellison had three qualifying predicate convictions for possession of heroin with the intent to deliver. *See* Iowa Code § 124.401(1)(c)(1).

Ellison argues that the Sixth Amendment right to trial by jury forbids the district court to determine whether he committed three prior felonies on different occasions. But this contention is contrary to our precedent, and the precedent of every circuit, so there is no obvious error under current law. *See United States v. Harris*, 794 F.3d 885, 887 (8th Cir. 2015).

Even if there were error, Ellison has not shown prejudice. He did not object to a paragraph of the presentence report detailing that he committed three drug felonies on occasions that were separated by at least a week: May 13, May 21, and May 29, 2014. Those facts are thus admitted. *United States v. Menteer*, 408 F.3d 445, 446 (8th Cir. 2005) (per curiam). A single factor, especially of time or place, can decisively differentiate occasions. *Wooden v. United States*, 142 S. Ct. 1063, 1071 (2022). Even if a jury finding were required, there is no reasonable probability that a jury would have found that any of these three prior offenses were committed on the same occasion. There is no plain error warranting relief.

Ellison next disputes the district court's upward departure under USSG § 5K2.1. Section 5K2.1 permits the court to increase a sentence above the authorized guideline range "[i]f death resulted" from the defendant's conduct. The policy statement directs the court to consider the defendant's state of mind, the degree of planning or preparation, whether multiple deaths resulted, and the means by which life was taken. The provision further states that the extent of an increase "should depend on the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury."

Ellison argues that the district court impermissibly departed based on factors other than Smothers's death. The record refutes his argument. Here, the district court determined that the departure was warranted because Ellison "discharged a firearm in a public place, a residential neighborhood next to a busy street, where children and other innocent people were present." These are permissible considerations that relate to the means by which Ellison killed Smothers and the dangerousness of Ellison's conduct. The district court did not abuse its discretion in relying on § 5K2.1 to depart upward.

-4-

Ellison also challenges his sentence as substantively unreasonable. He argues that the district court's "dramatic upward variance," which amounted to only one level beyond the guideline departure, was not supported by the factors under 18 U.S.C. § 3553(a). We review this question under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51-52 (2007). Where a sentence is outside the advisory guideline range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*.

The district court sufficiently considered the statutory factors and made an individualized assessment based on the facts presented. *See United States v. Parker*, 762 F.3d 801, 812 (8th Cir. 2014). In varying upward, the district court considered Ellison's extensive criminal history and concluded that his criminal history category understated the likelihood of recidivism and the seriousness of his criminal history. Ellison's criminal history scored 24 points under the guidelines, well above the 13 points required for placement in the highest criminal history category. Giving deference to the district court as required by *Gall*, we conclude that the one-level variance and the overall sentence is not unreasonable in light of § 3553(a).

The judgment of the district court is affirmed.

_____