**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 98-4560

JUDY ARRINGTON GILL,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-98-4-R)

Argued: September 24, 1999

Decided: October 20, 1999

Before WILKINSON, Chief Judge, and
HAMILTON and WILLIAMS, Circuit Judges.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Hamilton and Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** Charles Robison Allen, Jr., Roanoke, Virginia, for Appel-
lant. Anthony Paul Giorno, Assistant United States Attorney, Roa-
noke, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr.,
United States Attorney, Roanoke, Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Judy Gill was convicted of stealing or converting government money. She claims that the government's evidence was insufficient to support her conviction. We disagree. Because there was ample evidence from which a jury could conclude that Gill stole or converted a "thing of value of the United States," 18 U.S.C. § 641 (1994 & Supp. III 1997), we affirm the conviction.

I.

Russell Gill (Russell) was completely blinded when a bullet severed his optic nerve in November 1992. After recovering from his injury, Russell went to live with his mother, appellant Judy Gill (Gill). Gill helped Russell apply for social security disability benefits and opened a joint bank account under both of their names. Gill claims that she explained the joint account to Russell and that she and Russell signed for the account in the presence of a bank representative. Russell testified that he believed the account was his alone and that the social security payments would be directly deposited into the account. He also testified that he never authorized Gill to sign, deposit, cash, or use the proceeds of his social security checks.

After several months, Russell left Gill's home to live at the Rehabilitation Center for the Blind in Richmond. While Russell lived at the Center, Gill exercised effective control over the account. The social security checks were not directly deposited, but rather were mailed to Gill's address. Gill received the checks, endorsed them, and deposited them into the account. Between April 1993 and March 1994, Gill endorsed and deposited eleven social security disability checks that totaled more than $5000. Gill withdrew money from the account on a regular basis for her own benefit.

Gill was indicted for stealing or converting government money in excess of $1000 in violation of 18 U.S.C. § 641. Gill challenged the indictment, claiming that the money she took from the account was not a "thing of value of the United States" and that there was no evi-

2

dence of the requisite intent. The jury convicted Gill, and the district court sentenced her to thirty-six months probation and ordered restitution to the Social Security Administration (SSA) in the amount of $4,206. Gill appeals.

II.

The relevant statute provides: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof . . . [s]hall be fined . . . or imprisoned . . . ." 18 U.S.C. § 641.

Gill claims that the government failed to establish that the money at issue was a "thing of value of the United States."[1] Gill argues that she is entitled to an acquittal because she did not take government money, but rather placed the money into a joint account shared with her son. Gill maintains that the government had no interest in or control over the funds in the joint account.

We are unpersuaded. The Fourth Circuit takes a broad view of what constitutes a "thing of value of the United States." In United States v. Benefield, a cashier at an Officer's Club owned by the United States took a check intended as tip money for all employees and wrote in her own name as the payee. 721 F.2d 128, 128-29 (4th Cir. 1983). This court held that the tip money was a "'thing of value of the United States' until disbursed to the entitled employees." Id. at

---

[1] Gill also claims that the government could not prove that she had the requisite intent to steal or convert government funds. But there is ample evidence to support the conclusion that Gill intended to steal from the government. Indeed, 18 U.S.C. § 641 only requires the government to "show that a `thing of value of the United States' has been knowingly received, concealed or retained by the accused with improper intent." United States v. Torres Santiago, 729 F.2d 38, 40 (1st Cir. 1984) (emphasis added). Here, Gill intercepted the social security checks, endorsed them, and drew out funds for her own benefit -- thus preventing the money from reaching Russell, the government's intended beneficiary.

3

130. In <u>United States v. Littriello</u>, this circuit held that money embezzled from the American Postal Workers Union Health Plan were federal monies within the meaning of § 641 because of the extensive federal control and supervision over the fund. 866 F.2d 713, 717 (4th Cir. 1989).**2**

In addition, other circuits have considered cases with facts similar to this one. The First Circuit has held that stealing a government check prior to receipt by the named payee violated 18 U.S.C. § 641 because the government continued to have a property interest in the check. <u>See United States v. Forcellati</u>, 610 F.2d 25, 31 (1st Cir. 1979). A government check has "instrumental and record-keeping purposes" and thus "never genuinely ceases to be the property of the issuer." <u>Id.</u> Because a government check is intended to be returned to the government as a receipt of payment, "it does not stop being a government check at any time." <u>Id.</u> at 32. The Eighth Circuit has held that an unendorsed United States Treasury check continued to be a "thing of value of the United States" even <u>after</u> receipt of the check by the payee. <u>See United States v. O'Kelley</u>, 701 F.2d 758, 760 (8th Cir. 1983).

Here, the district judge properly denied Gill's motion for acquittal and submitted the disputed issue of value to the jury. There was ample evidence from which a jury could conclude that the social security checks were at all times a "thing of value of the United States." The funds represented by the checks originated from the government and thus were unquestionably property belonging to the government -- even more so than the tip money at an Officer's Club (<u>Benefield</u>) or the funds in a Postal Union Health Plan (<u>Littriello</u>). When Gill intercepted these checks without Russell's knowledge or consent, they were still the property of the United States. <u>See</u> <u>Forcellati</u>, 610 F.2d at 31 (government's property interest in a check is "not dependent on possession").

_____

**2** In most cases finding the government interest insufficient to convict under 18 U.S.C. § 641, title, ownership, or control had passed fully from the federal government. <u>See, e.g.</u>, <u>United States v. Yokum</u>, 417 F.2d 253, 255 (4th Cir. 1969); <u>United States v. Collins</u>, 464 F.2d 1163, 1165 (9th Cir. 1972).

Ownership of the social security money never passed to Russell. Rather, Gill received Russell's checks, endorsed them, and placed them into an account over which she exercised effective dominion and control. Russell testified that he never authorized the joint account, and so placing the social security checks into the nominally "joint" account did not transfer ownership to Russell. Because Russell had no control over the account, the money was never his. As a result, the checks and the money they represented remained the property of the United States.

Gill claims that a contrary result is suggested by United States v. Howard, 787 F. Supp. 769 (S.D. Ohio 1992). Howard is inapposite, however, because in that case title had already passed from the government. The court reasoned that the government retained no pecuniary interest in social security funds that were directly deposited into the account of the defendant's mother with her knowledge. Id. at 771. By contrast, in this case Russell's checks were sent to Gill without Russell's knowledge or consent -- he never actually received the money owed to him by the government. Moreover, in Howard, the court emphasized that the government suffered no loss as a result of the defendant's activity. Id. Here, however, the government suffered a loss because the SSA sent Russell over $5000 for the money stolen by Gill -- reinforcing the fact that Russell never had control over the money in the "joint" account.

This sad tale is intensified by Russell's disability. Gill suggests that her son's blindness and vulnerability allowed her to take money from their account, money that no longer belonged to the government. We believe, however, that the jury was entitled to think otherwise. Russell's blindness made it possible for Gill to intercept the checks before Russell ever had control over the money. As such, the son's blindness only facilitated the mother's theft from the government.

III.

For the foregoing reasons, the judgment of conviction is

AFFIRMED.

5