# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3893

_____

United States of America

*Plaintiff - Appellee*

v.

Timothy H. Shirley

*Defendant - Appellant*

_____

No. 12-3956

_____

United States of America

*Plaintiff - Appellee*

v.

Matthew K. Shirley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 13, 2013
Filed: July 11, 2013

_____

Before COLLOTON, GRUENDER, and BENTON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury convicted Matthew and Timothy Shirley of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and theft of government property, in violation of 18 U.S.C. § 641. Timothy also was convicted of Social Security fraud, in violation of 42 U.S.C. § 408. Matthew and Timothy appeal their convictions, claiming there was insufficient evidence to support the jury's verdict. Timothy also appeals his sentence. We affirm.

We state the facts in the light most favorable to the jury's verdict. *See United States v. Moya*, 690 F.3d 944, 947 (8th Cir. 2012). After having back surgery in 2003, Timothy Shirley filed an application for Social Security Disability Insurance Benefits. During the application process, Timothy acknowledged that any change in his ability to work could affect his eligibility for benefits, and he similarly acknowledged his responsibility to notify the Social Security Administration ("SSA") in the event he became able to work. The SSA processed Timothy's application and determined in January 2004 that he qualified for a monthly disability payment of $1,229. If at any time the SSA determined that Timothy was able to engage in "substantial gainful activity," he would no longer be eligible for Social Security disability benefits. In 2010, the SSA considered a person able to engage in "substantial gainful activity" if he earned more than $1,000 per month. When determining a person's eligibility for benefits, the SSA considers fringe benefits, such as employer-provided housing and an employer's payments to an employee's creditors, to be income.

As early as the spring of 2004, Timothy began working for Mare Transportation, a Nebraska City, Nebraska trucking company owned by his brothers, Matthew and Robert, and their wives. At Mare, Timothy was given his own office

and primarily was responsible for auditing drivers' log books. Timothy also dispatched trucks and, on occasion, drove loads for Mare to locations as far as Wisconsin and Arkansas. Some weeks, Timothy was at Mare's offices seven days a week.

Timothy received two forms of compensation for his work. Matthew frequently gave Timothy large sums of cash, and Robert issued company checks to pay Timothy's bills. According to Robert, Mare paid Timothy "a minimum of 2,500 dollars each month" in addition to paying his "credit card bills, his utility bills, his and his children's cellular telephone bills[,] . . . . and college [t]uition and book fees for his children." After Robert left Mare in 2008 and the company reformed as Frits Transportation, Matthew continued to give Timothy cash payments and issue company checks to pay Timothy's bills. Several Mare and Frits employees knew that Timothy was on disability and also were aware that Matthew paid him in cash. Despite receiving substantial income from Mare and Frits, Timothy continued to accept disability payments and never reported his earnings to the SSA.

In January 2009, the SSA received a report that Timothy was earning $1,000 per week for his work at Mare and Frits. The SSA's Inspector General then opened an investigation into Timothy's and Matthew's activities. On May 20, 2011, a grand jury returned an indictment charging Matthew and Timothy with conspiracy to defraud the United States and theft of government property. The indictment also charged Timothy with Social Security fraud. After an eight-day trial, a jury found Matthew and Timothy guilty on all counts. The district court[1] sentenced Matthew to 12 months and one day's imprisonment and Timothy to 21 months' imprisonment.

Timothy and Matthew appeal their convictions, arguing that the Government presented insufficient evidence for a jury to find them guilty beyond a reasonable

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

-3-

doubt. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Brooks*, 715 F.3d 1069, 1080-81 (8th Cir. 2013) (quoting *United States v. Miller*, 698 F.3d 699, 702 (8th Cir. 2012)). "[W]e will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* at 1081 (alteration in original) (quoting *United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir.2009)).

With respect to his conspiracy conviction, Matthew argues that the Government presented insufficient evidence that he knowingly participated in a conspiracy to defraud the United States. *See United States v. Campbell*, 848 F.2d 846, 851 (8th Cir. 1988) ("A conspiracy under 18 U.S.C. § 371 consists of an agreement to defraud the United States along with an act by one or more of the conspirators to effect the object of the conspiracy."); *see also United States v. Sweeney*, 611 F.3d 459, 468 (8th Cir. 2010) ("To prove conspiracy under [18 U.S.C.] § 371, the Government must show beyond a reasonable doubt that the [defendants] knowingly entered into an agreement or reached an understanding to commit a crime . . . ." (alterations in original) (quoting *United States v. Farrell*, 563 F.3d 364, 376 (8th Cir. 2009))). With respect to his conviction for theft of government property, Matthew challenges the sufficiency of the evidence that he intentionally stole United States government property. *See United States v. McCorkle*, 688 F.3d 518, 521 n.3 (8th Cir. 2012) ("To obtain a conviction at trial for theft of government property, the government must prove beyond a reasonable doubt that the defendant . . . voluntarily, intentionally, and knowingly stole or converted money to his own use or to the use of another . . . .").

Matthew claims that he and other family members encouraged Timothy to spend time at Mare and Frits to alleviate his depression and that the payments Timothy received were not compensation for work activity. Instead, he argues that Matthew and other family members gave Timothy money to ease the financial burdens that accompanied his disability. Viewing the evidence in the light most favorable to the verdict, however, the Government established both Matthew's

knowing participation in a conspiracy to defraud the United States and his intent to steal government funds for the use of Timothy. Several Mare employees testified about the cash payments Timothy received, with one recalling, "[Matthew] said he had to pay Tim that way . . . because he couldn't leave no paper trail for Tim being on disability." Robert's wife Maria once asked Matthew why Timothy was receiving cash payments, and Matthew replied, "because he's getting Social Security and he's going to be in trouble, damn it." Numerous exhibits also demonstrated that Matthew signed Mare and Frits company checks to pay Timothy's personal credit card bills, his mobile phone bills, and his utility bills.

A reasonable jury could conclude from this evidence that Matthew knew Timothy's eligibility for disability benefits was contingent on his inability to work and that he intended to conceal Timothy's income from the SSA. Whenever Matthew paid Timothy directly, he did so in cash. In contrast, when paying Timothy's bills by company check, Matthew made the checks payable to Timothy's creditors, not to Timothy. This evidence also supports a finding that Matthew intended to join a conspiracy with Timothy and that the conspiracy's purpose was to steal government property—the Social Security disability payments Timothy received while gainfully employed by Mare and Frits. *See Sweeney*, 611 F.3d at 468 ("A formal agreement is not required to create a conspiracy, and the existence of a conspiracy can be proved by direct or circumstantial evidence." (quoting *United States v. Williams*, 534 F.3d 980, 985 (8th Cir. 2008)). Accordingly, we conclude that the Government presented sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Matthew knowingly participated in a conspiracy to defraud the United States and that he intended to steal government property.

Matthew also challenges his theft of government property conviction by arguing that the Government failed to establish that the Social Security funds Timothy received were a "thing of value of the United States." *See* § 641 ("Whoever embezzles, steals, purloins, or knowingly converts . . . any record, voucher, money, or thing of value of the United States . . . ."). He claims that Timothy's disability

payments came from a trust fund that belongs to the individuals who fund it, not the United States government.

We reject Matthew's argument. In *Overton v. United States*, 619 F.2d 1299 (8th Cir. 1980), we determined that Medicare payments, which the government makes from the Federal Hospital Insurance Trust Fund, are not "wholly independent" of the general revenues of the United States Treasury. In so holding, we explained that

> [a]lthough . . . the Federal Hospital Insurance Trust Fund[] is a bookkeeping entity conceptually collateral to the unfunded general revenues . . . the trust fund consists of appropriations from those general revenues, 42 U.S.C. § 1395i, and is in any case the creation of the government's taxing and spending power; it is not wholly independent of the government itself.

*Id*. at 1307. We found the distinction between trust funds, including the Federal Hospital Insurance Trust Fund and the Federal Old-Age and Survivors' Insurance Trust Fund, and general revenues of the United States Treasury to be "unsound" and "artificial." *Id*. at 1308.

The Federal Disability Insurance Trust Fund is no different. Like the Federal Hospital Insurance Trust Fund in *Overton*, the Federal Disability Insurance Trust Fund is funded by appropriations from the Treasury's general revenues. *See* 42 U.S.C. § 401(b). Thus, although the Federal Disability Insurance Trust Fund is a "bookkeeping entity" conceptually separate from the general revenues of the United States Treasury, it is a "creation of the government's taxing and spending power" that is not fully independent of the general revenues. *See Overton*, 619 F.2d at 1307. It follows that Timothy's disability payments, which were paid from the Federal Disability Insurance Trust Fund, were not fully independent of the general revenues of the United States Treasury. We are therefore convinced that the Social Security

-6-

payments Timothy received were a "thing of value of the United States."[2]  *See, e.g., United States v. O'Kelley*, 701 F.2d 758, 760 (8th Cir. 1983) (per curiam) (holding that an unendorsed Treasury check remained a "thing of value of the United States" even after being remitted by the Government to the named payee).  We affirm Matthew's convictions.[3]

Timothy argues that the Government presented insufficient evidence to support his convictions on all three counts solely on the basis that "the linkage between Timothy's presence and activities at the company and compensation for it came from unindicted coconspirators and cooperating witnesses which should not have been credited by a reasonable jury."  He claims that several of the Government's witnesses were convicted felons who were not credible, that the Government's evidence regarding Timothy's employment with Mare and Frits was "not conclusive," and that the documentary exhibits did little to bolster the testimony of the witnesses.

As an appellate court, it is well established that we do not second guess the jury's findings of fact.  *See United States v. Tarnow*, 705 F.3d 809, 814 (8th Cir. 2013) ("It is the function of the jury, not an appellate court, to . . . judge the credibility of witnesses. Such credibility findings are virtually unreviewable on appeal." (quoting *United States v. Mann*, 701 F.3d 274, 298 (8th Cir. 2012))); *United States v. White*, 675 F.3d 1106, 1109 (8th Cir. 2012) ("Attacks on the sufficiency of

---

[2]Although we have never directly addressed in the criminal context the question of whether payments from the Federal Disability Insurance Trust Fund constitute a "thing of value of the United States," we have upheld § 641 convictions involving the theft or conversion of Social Security payments.  *See United States v. McCorkle*, 688 F.3d 518 (8th Cir. 2012); *United States v. Spear*, 734 F.2d 1 (8th Cir. 1984); *see also United States v. Gill*, 193 F.3d 802, 804 (4th Cir. 1999) (holding that Social Security funds "remained the property of the United States" even after being deposited into a third-party's bank account).

[3]In his reply brief, Matthew also argues for the first time that 18 U.S.C. § 641 is unconstitutionally vague.  We do not consider arguments first raised in a reply brief.  *See United States v. Chalupnik*, 514 F.3d 748, 752 n.1 (8th Cir. 2008).

the evidence that call upon this court to scrutinize the credibility of witnesses are generally not an appropriate ground for reversal." (quoting *United States v. McKay*, 431 F.3d 1085, 1094 (8th Cir. 2005))). In this case, we similarly "decline to substitute our own judgment for that of the jury." *See White*, 675 F.3d at 1109. Government witnesses testified that Timothy spent up to seven days a week at Mare and Frits and received cash payments, and documentary evidence established that Matthew issued company checks payable to Timothy's personal creditors. "[V]iewing the facts most favorably to the verdict," *Moya*, 690 F.3d at 949, a reasonable jury could find that Timothy was gainfully employed by Mare and Frits. Because Timothy offers no other grounds for reversal, we affirm his convictions.

Timothy also appeals his sentence, claiming that it is longer than necessary to achieve the goals of sentencing. He argues that proper consideration of the 18 U.S.C. § 3553(a) sentencing factors would result in a below-guideline sentence. "Because [Timothy] does not challenge the district court's calculation of the advisory sentencing guidelines range, we review his sentence for an abuse of discretion and note that a sentence within the guidelines is presumptively reasonable on appeal." *United States v. Torres*, 552 F.3d 743, 747-48 (8th Cir. 2009).

The district court calculated Timothy's advisory sentencing guideline range to be 21 to 27 months' imprisonment. Prior to sentencing, Timothy moved for a departure or variance from the advisory guidelines and requested a sentence of probation. After considering the § 3553(a) factors, the district court acknowledged that a probationary sentence was statutorily possible but nevertheless elected to sentence Timothy to the low end of the advisory guideline range in order to promote both general and specific deterrence. Because the record indicates that the district court considered the § 3553(a) factors and did not clearly err in weighing them, *see United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005), we conclude that Timothy's sentence is not unreasonable and that the district court did not abuse its discretion. *See United States v. Feemster*, 572 F.3d 455, 461-64 (8th Cir. 2009) (en banc) ("[I]t will be the unusual case when we reverse a district court

sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008))).

Accordingly, we affirm the convictions and Timothy's sentence.

_____