**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4519

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BENITA DINKINS-ROBINSON,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Terry L. Wooten, Chief District Judge.  (3:14-cr-00300-TLW-1)

Argued:  January 26, 2017

Decided:  February 15, 2017

Before MOTZ, KING, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Andrew Mackenzie, BARRETT-MACKENZIE, LLC, Greenville, South Carolina, for Appellant.  Winston David Holliday, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Beth Drake, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Benita Dinkins-Robinson of embezzling federal funds in violation of 18 U.S.C. § 641. On appeal, she argues that the government failed to show that the funds taken belonged to the federal government or that she took more than $1,000 of federal funds. She also challenges the district court's calculation of the amount of loss at sentencing and its restitution order. For the reasons that follow, we affirm.

I.

From 2007 to 2012, Dinkins-Robinson served as executive director of the Mary L. Dinkins Learning Academy, a charter school located in Bishopville, South Carolina. During these years, the school received approximately $5.27 million from state and federal sources. Roughly one third of that money, $1.76 million, came from the federal government, specifically, the United States Department of Agriculture ("USDA") and the Department of Education ("DOE"). The USDA funds were intended to reimburse the school for expenses related to its participation in federal nutrition programs. The DOE funds were intended to reimburse the school for expenses related to Title I and Title II programs and compliance with the Individuals with Disabilities Education Act ("IDEA"). The school kept its state and federal funds in a single, undifferentiated bank account.

The government alleged that Dinkins-Robinson used her position to embezzle $1.56 million from this account. She set up a series of shell corporations and used the school's money to pay those corporations for services never actually rendered and for goods never actually delivered. Dinkins-Robinson then drew freely on the corporations'

accounts to pay for personal expenses and to fund five annuity accounts at Allianz Life Insurance Company.

Dinkins-Robinson's frequent deposits eventually raised red flags at Allianz, which reported the suspicious activity to the FBI. After an investigation, the government charged Dinkins-Robinson with two counts of embezzling federal property in violation of 18 U.S.C. § 641. Count One alleged that Dinkins-Robinson embezzled more than $1,000 of the USDA funds. Count Two alleged that Dinkins-Robinson embezzled more than $1,000 of the DOE funds.

The trial lasted two and a half weeks. At the close of the government's case-in-chief, Dinkins-Robinson moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the evidence against her was insufficient as to both counts. The court denied the motion. Dinkins-Robinson renewed her motion at the close of evidence, which the court denied once again. After deliberation, the jury found Dinkins-Robinson guilty on both counts and found her house and all five annuity accounts subject to forfeiture. The court ordered the forfeiture and sentenced Dinkins-Robinson to 42 months' imprisonment, three years of supervised release, and ordered her to pay restitution to USDA and DOE. Dinkins-Robinson timely noted this appeal.

## II.

Dinkins-Robinson first challenges the denial of her motion for a judgment of acquittal. We must affirm if, "viewing the evidence in the light most favorable to the

3

government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

Section 641 provides that:

> Whoever embezzles, steals, purloins, or knowingly converts . . . any record, voucher, money or thing of value of the United States or of any department or agency thereof . . . [s]hall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 641 (2012). Thus, to sustain a felony conviction under § 641, the government must show beyond a reasonable doubt that: (1) the defendant committed some form of theft or wrongful conversion, (2) the defendant stole property "of the United States or of any department or agency thereof," and (3) the total value of the federal property taken exceeded $1,000.

Dinkins-Robinson contends that the evidence against her was insufficient to establish the second and third elements. That is, she argues that the government failed to show that the USDA and DOE funds belonged to the federal government when she withdrew them from the school's account or that she took more than $1,000 of the federal funds. We consider these challenges in turn.

A.

When the federal government disburses funds, they remain property "of the United States" for the purposes of § 641 if the government continues to exercise "supervision and control" over the funds. *See, e.g.*, *United States v. Gill*, 193 F.3d 802, 804 (4th Cir. 1999); *United States v. Littriello*, 866 F.2d 713, 714–15 (4th Cir. 1989); *United States v.*

4

*Reynolds*, 919 F.2d 435, 438 (7th Cir. 1990); *Hayle v. United States*, 815 F.2d 879, 882 (2d Cir. 1987); *United States v. Von Stephens*, 774 F.2d 1411, 1413 (9th Cir. 1985) (per curiam); *United States v. Smith*, 596 F.2d 662, 664 (5th Cir. 1979).

The government may continue to supervise and control funds even when it pays them out as reimbursements. *See United States v. Hall*, 549 F.3d 1033, 1035, 1040–41 (6th Cir. 2008). This may be done by, for example, restricting the use of the federal funds, requiring grantees to comply with various federal program guidelines, requiring grantees to submit budgets or invoices and keep records, retaining the power to monitor grantees' compliance with federal requirements and audit grantees' use of the funds, or retaining the power to withhold or recall the funds. *See Littriello*, 866 F.2d at 715–17; *Hall*, 549 F.3d at 1038–39. Accordingly, the only real issue here is whether the government, viewing the evidence in the light most favorable to it, presented sufficient evidence that USDA and DOE continued to supervise and control the funds at issue.

In support of its contention that it retained supervision and control over the USDA funds, the government offered the testimony of Walter F. Caudle, III, who oversees the implementation of the National School Lunch Program for the South Carolina Department of Education. Caudle testified that the state acts as an agent of the federal government in implementing the federal nutrition programs. Schools enter into a participation agreement with the state in its capacity as an agent of the federal government, and the agreement specifies the school's responsibilities under the program. Caudle explained that he conducted an audit of the school's food program in his capacity as an agent of the federal government implementing a "coordinated review effort." From

5

this evidence, the jury could conclude beyond a reasonable doubt that USDA continues to supervise and control the funds at issue here.[1]

The government also presented substantial evidence that DOE supervises and controls the use of Title I, Title II, and IDEA funds. Multiple witnesses testified that the funds pass through the states but that the federal government disburses the funds only after the state collects proposals from the various school districts and submits them for federal approval. As part of this process, a school submits a written plan as to how it intends to use its DOE funds. Witnesses also testified that the DOE funds may only be used for specific purposes. William Moser, a private accountant who kept the school's books, and Dinkins-Robinson's own witness, testified that the school used a system of codes to keep track of federal expenditures. For example, expenditures related to Title I, Title II, and IDEA programs were coded in the 200 series. Moser referred to these funds as "special federal money" and referred to expenditures related to these programs as "federal expenditures." Viewing this evidence in the light most favorable to the government, a reasonable jury could conclude that DOE does not disburse these funds with no strings attached but continues to supervise and control their use. For the

---

[1] The government also offered the testimony of William C. Eaton, the former director of public relations for the charter school district, who testified that a participating school's food programs had to meet federal nutrition guidelines. He described a conversation he had with Dinkins-Robinson in which she claimed to have "turned a profit" on the food program and discussed her plans to use the extra money to construct a building for the school. Eaton testified that this is a plainly impermissible use of the USDA funds.

purposes of § 641, this suffices to show that the DOE funds remained property of the federal government.

B.

Dinkins-Robinson also contends that the government failed to show that more than $1,000 of the $1.56 million she embezzled belonged to the federal government. She argues that, because the money the school received from state and federal sources was commingled in one undifferentiated account, the government could not show that the money she took was federal, as opposed to purely state, money. We reject this argument given the specific facts of this case.

Federal funds do not lose their federal character just because a recipient commingles them with other money in a single account. *See Von Stephens*, 774 F.2d at 1413. In such cases, it is harder, but of course not impossible, to show that the particular dollars taken by the defendant were in fact federal dollars. *See id.* (affirming the conviction even though federal funds were commingled).

In this case, the USDA and DOE funds made up roughly one third of the money in the commingled account, from which Dinkins-Robinson embezzled a total of $1.56 million. The jury only needed to infer that more than $1,000 — less than one tenth of one percent of the total — was federal money. 18 U.S.C. § 641 (2012) (providing that the government need only show that "the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case" is greater than $1,000). We see no reason why a reasonable jury could not draw this conclusion given the proportions and high dollar amounts involved.

7

We need not, and do not, decide whether a reasonable jury could draw the same inference when federal funds represent a smaller percentage of the funds in a commingled account. We also do not decide whether this inference would be reasonable when the total amount embezzled is significantly smaller. We hold only that a reasonable jury could infer beyond a reasonable doubt that more than $1,000 of the $1.56 million Dinkins-Robinson embezzled came from federal sources, given that one third of the $5.27 million in the school's account came from those sources. Accordingly, we affirm the denial of Dinkins-Robinson's motion for a judgment of acquittal as to both counts.

III.

A.

Next, Dinkins-Robinson challenges two aspects of her sentence. She argues, first, that the district court miscalculated the amount of loss. We review for clear error, *United States v. Cloud*, 680 F.3d 396, 409 (4th Cir. 2012), with the understanding that a court "need only make a reasonable estimate of the loss." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1 cmt. n.3(C) (U.S. Sentencing Comm'n 2014).

After hearing all of the available evidence, the district court found that the total amount of loss was $1.56 million. Dinkins-Robinson argues that the government failed to show that she took $1.56 million in *federal* money, but this is immaterial. The district court was entitled to include any "relevant conduct" in its loss calculation, which includes any monetary loss resulting from Dinkins-Robinson's embezzlement. *See* U.S.S.G. § 1B1.3(a)(3) and cmt. n.4. The court did not clearly err in its finding that Dinkins-

8

Robinson embezzled a total of $1.56 million. And although it is difficult to distinguish the state and federal money in this case, Dinkins-Robinson plainly embezzled this money as part of one undifferentiated scheme. Accordingly, we affirm the district court's loss calculation.[2]

B.

Second, Dinkins-Robinson challenges the district court's restitution order. Pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A (2012), the court ordered Dinkins-Robinson to pay $1,561,934.14 in restitution, the total amount of loss. The court ordered her to pay $954,662.61 to USDA and $607,271.58 to DOE. Dinkins-Robinson contends that the district court miscalculated the agencies' actual losses, given that the government could not prove that all of the money she took was federal money.

Dinkins-Robinson never raised this objection before the district court. Accordingly, we review for plain error. *United States v. Seignious*, 757 F.3d 155, 160 (4th Cir. 2014). Under this standard, we can reverse only if we find that: (1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

---

[2] We also note that, even if the district court had erred in its calculation, the error was harmless because the resulting sentence was not longer than that to which Dinkins-Robinson would otherwise have been subject. *See United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010). The district court used its discretion to apply a 14-level enhancement, rather than the 16-level enhancement called for by its loss calculation. Under the applicable guidelines, a 14-level enhancement corresponded to a loss amount of $400,000 to $1,000,000. U.S.S.G. § 2B1.1(b)(1). It would not have been clearly erroneous to conclude that the total amount of loss in this case was at least $400,000.

*United States v. Marcus*, 560 U.S. 258, 262 (2010).  Dinkins-Robinson has failed to meet this rigorous standard.  We therefore affirm the district court's restitution order.

IV.

Finally, Dinkins-Robinson raises several other challenges in her supplemental *pro se* brief.  After review, we find that all of them lack merit.  Accordingly, the judgment of the district court is

*AFFIRMED*.