**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4165

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

MARCEL KIZA, a/k/a Amuri Ntambwe Kiza,

Defendant − Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:15−cr−00046−REP−1)

Argued: March 23, 2017                          Decided: May 1, 2017

Before DUNCAN, AGEE, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Agee and Judge Keenan joined.

**ARGUED:** Melissa Jane Warner, LAW OFFICE OF MELISSA J. WARNER, Glen Allen, Virginia, for Appellant. Heather Hart Mansfield, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DUNCAN, Circuit Judge:

Marcel Kiza, a.k.a. Amuri Ntambwe Kiza ("Defendant"), was convicted of theft of government property in violation of 18 U.S.C. § 641. Defendant appeals, arguing primarily that social security survivors' benefits are not a thing of value within the meaning of § 641. For the reasons that follow, we affirm.

I.

In light of the somewhat intricate facts before us, we begin with an overview of the statutory context. We then turn to Defendant's particular circumstances.

A.

The benefits at issue in this case are survivors' benefits--that is, benefits paid to eligible surviving spouses and children. Those benefits come from the Federal Old-Age and Survivors Insurance Trust Fund (the "Trust Fund"), one of several trust funds Congress established to manage benefits programs. *See* 42 U.S.C. § 401(a).[1] The Trust Fund is funded by designated appropriations "from the general fund in the Treasury" based on actual payroll taxes. *Id.* In addition to appropriations, the Trust Fund also controls "other assets," including "gifts and bequests." *Id.*; *see also id.* § 401(i).

---

[1] Other trust funds include the Federal Disability Insurance Trust Fund, the Federal Hospital Insurance Trust Fund, and the Federal Supplementary Medical Insurance Trust Fund. *See* 42 U.S.C. §§ 401(b), 1395i, 1395t. These funds are funded in different ways. For example, the Federal Disability Insurance Trust Fund is funded from general appropriations based on certain percentages of reported wages. *Id.* § 401(b).

To oversee the Trust Fund, Congress created a Board of Trustees, composed of four government officials and two members of the public nominated by the President. *Id.* § 401(c). The Board of Trustees holds the Trust Fund, reports to Congress on its operation and "actuarial status," recommends improvements to its administration, and notifies Congress when the amounts in the fund are "unduly small." *Id.* As to its operation, Congress stipulated that the Trust Fund would reimburse the Treasury's general fund for certain administrative costs related to benefits programs paid out of the Treasury's general fund. *See id.* § 401(g).

B.

Defendant immigrated to the United States in 1991 and soon thereafter applied for permanent residence using the name Ntambwe Kiza Amuri. The government granted his application, assigning him an Alien Registration Number ending in 21. On December 9, 1991, Defendant applied for a social security number using the name Amuri Ntambwe Kiza. The government assigned him a social security number ending in 53.

As Amuri Ntambwe Kiza, Defendant applied for social security benefits twice, first on November 18, 2005, and again on February 22, 2007, but the government denied both applications. On at least one of those applications, Defendant represented that his children were G.K. and N.K., that he was married to Afia Bubanji Kiza, and that his social security number ended in 53.

In 2007, Defendant applied for naturalization under the name Ntambwe Kiza Amuri using his Alien Registration Number ending in 21 and social security number ending in 53. Again, he listed his children as G.K. and N.K. Defendant also indicated

3

that he would like to change his name at the time of naturalization to Marcel Joshua Kiza. That name change became effective with his naturalization on April 18, 2007.

On August 29, 2007, Defendant, as Marcel Joshua Kiza, applied for another social security number, using as proof of his eligibility two documents: his naturalization certificate and Alien Registration Number ending in 21. On the application, Defendant falsely stated that he had never filed for or received a social security number card. He received a new social security number ending in 31.

Using the identity Marcel J. Kiza, in late 2010 Defendant applied for social security survivors' benefits for minors G.K. and N.K. On that application, Defendant represented that Amuri Ntambwe Kiza, assigned social security number ending in 53, had died on August 30, 2010, and that therefore G.K. and N.K. were entitled to benefits. The Social Security Administration ("SSA") approved benefits and assigned Defendant as the representative payee for the children. Defendant completed payee reports to account for the monies he received. From 2011 until August 2013, as the representative payee for G.K. and N.K., Defendant received survivors' benefits totaling $51,860.

C.

On March 18, 2015, a grand jury indicted Defendant of one count of theft of government property, in violation of 18 U.S.C. § 641. The trial began on October 5, 2015. Because Defendant chose not to testify and presented no evidence at trial, all of the witnesses and exhibits came from the government.

To explain to the jury the nature of social security benefits, at trial the government called as a witness Gavi Simms, a special agent with SSA's Office of the Inspector

4

General. Agent Simms testified that SSA is an agency of the United States and asserted that property dispersed by SSA is therefore property of the United States. He also explained that money paid by taxpayers goes into the Trust Fund, which is a government creation. SSA determines who is qualified to receive certain benefits. If SSA designates benefits to go to children under the age of 18, it appoints a representative payee to receive those benefits on behalf of the children. Agent Simms further explained that the money paid to recipients as benefits is issued from the U.S. Treasury. Referencing Defendant's application for social security survivors' benefits provided by the government, Agent Simms testified that Defendant applied for, and received as representative payee, social security survivors' benefits for G.K. and N.K.

The government also offered evidence and witnesses to show that Defendant created two identities and used those identities to perpetrate the fraud. Special Agent Henry Scott, also from SSA's Office of the Inspector General, testified that he interviewed Defendant at his home as part of SSA's investigation into his receipt of social security benefits. Defendant, identifying himself as Marcel Kiza, indicated that he was married to Afia Kiza and that they shared two children, G.K. and N.K. Agent Scott further testified that when he confronted Defendant with the identity of Amuri Kiza, "the story changed," and Defendant said that Amuri Kiza was the biological father of the children and had "died in a car accident in Congo in 2008." J.A. 53.

In addition to Defendant's conflicting statements at his interview, the government also introduced evidence at trial to show that Marcel Kiza and Amuri Kiza are the same person. A fingerprint examiner testified that the fingerprints taken from Marcel Joshua

5

Kiza by the Virginia State Police and Amuri Ntambwe Kiza by U.S. Citizenship and Immigration Services belonged to the same person and that they also matched the fingerprints taken from Defendant at the time of his arrest. The government proffered photographs of driver's licenses Defendant obtained from the Virginia Department of Motor Vehicles under the identities of Amuri Ntambwe Kiza and Marcel Joshua Kiza.

To further confirm Defendant's double identities, the government called Jack Bubanji as a witness. Bubanji testified to knowing Defendant because Defendant had lived with him and his sister, Afia, for four years and that Bubanji called Defendant his brother-in-law. He said Defendant had two children with Afia, a daughter G. and a son N. Bubanji knew Defendant as Marcel Kiza, but said people asked for "Amuri Kiza Ntambwe, something like that," when they visited. J.A. 76. Bubanji never knew Defendant to have a twin brother.

During cross-examination Bubanji testified that Afia was not present in court, that he did not currently live with her, and that he did not know government agents had spoken with her. Defense counsel then inquired whether Bubanji was aware that the government had initiated deportation proceedings against Afia Kiza as part of the defense's strategy to impeach Bubanji as biased against Defendant. Defense counsel argued that Afia Kiza "would not have otherwise been on immigration radar except for th[e] investigation" into Defendant. J.A. 85. The government objected, and the district court sustained, finding that Bubanji's knowledge of deportation proceedings against his sister had only "very tenuated" relevance and risked confusing the jury by raising a

6

speculative "sub issue" about why the government began deportation proceedings against Afia Kiza. J.A. 86.

At the end of the government's case, Defendant moved for a judgment of acquittal. The district court denied the motion.

On October 6, 2015, a jury found Defendant guilty of the single charge in the indictment: theft of government property in violation of 18 U.S.C. § 641. Defendant timely appealed.

## II.

To obtain a conviction under 18 U.S.C. § 641, the government must establish beyond a reasonable doubt that: (1) the money or property described in the indictment is money or a thing of value of the United States (2) that the defendant stole, fraudulently received, or converted to his own use (3) with the intent to permanently or temporarily deprive the government of that money or thing of value. *United States v. Hamilton*, 699 F.3d 356, 363 (4th Cir. 2012). On appeal, Defendant argues that the government failed to prove each of these elements and the district court therefore erred in denying his motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Defendant also argues that the district court erred by limiting his cross-examination of Bubanji, a government witness. We address each argument in turn.

### A.

We review de novo both the essential statutory elements of a crime and a district court's denial of a Rule 29 motion for judgment of acquittal. *United States v. Wills*,

234 F.3d 174, 176 (4th Cir. 2000); *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). In reviewing challenges to the sufficiency of the evidence, we assess whether "*any* rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must uphold the jury's verdict if, viewing the evidence in the light most favorable to the government, substantial evidence supports it. *United States v. Sullivan*, 455 F.3d 248, 260 (4th Cir. 2006).

1.

Defendant argues that the district court erred in denying his motion for judgment of acquittal because social security survivors' benefits are not government property within the meaning of § 641. Under Defendant's theory, individuals pay payroll taxes into social security, which is held in a trust fund and invested only in government securities, and only that money (and interest) is later paid out to the persons who paid into that fund. Defendant contends that because the benefits he received on behalf of the children were money from individual citizens, not money from the United States government, the government cannot establish the first element of § 641. The government counters that the benefits at issue are a thing of value under § 641 because they originated from the United States government and are regulated and accounted for by the government. We agree.

"The Fourth Circuit takes a broad view of what constitutes a 'thing of value of the United States.'" *United States v. Gill*, 193 F.3d 802, 804 (4th Cir. 1999). In *Gill*, we held that social security disability checks intercepted prior to reaching their intended

8

recipient are a thing of value of the United States. *Id.* There, the intended recipient's mother had a joint bank account with the intended recipient. *Id.* at 803. The mother intercepted the checks without the intended recipient's knowledge and deposited the disability checks into the account, but used the money for her own benefit. *Id.* We concluded that the checks "originated from the government and thus were unquestionably property belonging to the government." *Id.* at 804. And because the defendant there prevented the intended recipient from receiving the money, the checks "were still the property of the United States." *Id.*

The same reasoning applies here. In this case, the funds originated from the same government agency as in *Gill*, the SSA, and never reached their intended recipients. In fact, there were no valid intended recipients: because Defendant pretended to be a surviving guardian of his own children the government never should have disbursed the benefits at all. Defendant nevertheless contends that the money from SSA at issue here is not government property in the first instance because it comes from individual taxpayers and is allegedly earmarked for them in a trust, unlike the disability benefits based on reported wages at issue in *Gill*. We disagree.

The Eighth Circuit rejected a trust-fund argument substantially similar to the one Defendant raises here. *United States v. Shirley*, 720 F.3d 659 (8th Cir. 2013). In *Shirley*, the defendant challenged his § 641 conviction, arguing that social security disability payments came from a trust fund, which belonged to the individuals who funded it, and therefore were not property of the United States. *Id.* at 663. The court disagreed. It found that social security trust funds--including the Federal Disability Insurance Trust

9

Fund (at issue there) and the Federal Old-Age and Survivors Insurance Trust Fund (at issue here)--are "funded by appropriations from the Treasury's general revenues." *Id.* at 664. Thus, "the distinction between trust funds . . . and general revenues of the United States Treasury [is] 'unsound' and 'artificial.'" *Id.* (quoting *Overton v. United States*, 619 F.2d 1299, 1308 (8th Cir. 1980)). The court reasoned that although the Federal Disability Insurance Trust Fund was a "'bookkeeping entity' conceptually separate from the general revenues of the United States Treasury, it is a 'creation of the government's taxing and spending power' that is not fully independent of the general revenues." *Id.* (quoting *Overton*, 619 F.2d at 1307). The court therefore held that the social security payments were a "thing of value of the United States" and thus could support a conviction under § 641. *Id.* at 663–64.

The same is true here. Like the Federal Disability Insurance Trust Fund at issue in *Shirley*, the Trust Fund at issue here is funded by appropriations from the Treasury's general revenues. *Compare* 42 U.S.C. § 401(a), *with id.* § 401(b). Congress also stipulated that the trust funds would reimburse the Treasury's general fund account for certain social security obligations paid out of the general fund. *See id.* § 401(g). These provisions suggest that, while the funds may be conceptually distinct from the general revenues, in practice they operate as an accounting mechanism that does not undermine their federal character.

Other general statutory provisions belie Defendant's theory. That the Board of Trustees for the Trust Fund must report to Congress on the "actuarial status" of the fund, *id.* § 401(c), suggests that the government does not reserve individual taxpayer

10

contributions for those individuals but rather makes statistical estimates for the population of intended beneficiaries. Moreover, that the Trust Fund has "other assets" besides appropriated funds, including "gifts and bequests," *id.* § 401(a), suggests that the funds do not, as Defendant asserts, include only individual taxpayers' contributions, but also other funds that are unquestionably government property.[2]

Because of their distinctly federal character, we hold that, as a legal matter, social security survivors' benefits are a thing of value of the United States that can support a conviction under 18 U.S.C. § 641. Therefore, to satisfy this element of the offense it was enough for the government to show that Defendant received such benefits. The government provided ample evidence that he did, and Defendant does not argue otherwise on appeal. For these reasons, the government met its burden of proof as to the first element of the offense, and the district court did not err in denying Defendant's motion for acquittal on this basis.

2.

Defendant also argues that the district court otherwise erred in denying his Rule 29 motion because the government failed to prove the second and third elements of the offense--that he "stole and knowingly converted the money and that he acted knowingly

---

[2] We also agree with the government's argument that its supervision and control even after disbursing social security benefits, as demonstrated by Defendant's filing forms accounting for the benefits he received, further supports our conclusion that these benefits are a thing of value of the United States. *Cf. United States v. Littriello*, 866 F.2d 713, 717 (4th Cir. 1989); *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir. 1981).

11

and willfully with intent to deprive the government of the use and benefit of the property." Appellant's Br. at 22. This argument lacks merit.

The government presented ample evidence that Defendant faked his own death and created a new identity, his alleged twin brother, to receive social security survivors' benefits for his two children. The government established that Amuri Kiza and Marcel Kiza were the same person, rather than two brothers, based on (1) fingerprint evidence showing that the fingerprints of Amuri Kiza and Marcel Kiza are from the same individual, Defendant, (2) Defendant's immigration records, (3) Defendant's interview statement that the children were his and his later statement that they were his brother's, and (4) testimony from Defendant's brother-in-law, Jack Bubanji, that Defendant does not have a twin brother.[3] The evidence also established that before perpetrating the instant fraud Defendant twice applied for supplemental social security benefits but was denied both times. The jury could reasonably infer from two denied benefits applications that Defendant had a motive to file under a different benefits program to again attempt to obtain benefits to which he was not entitled. Viewed in the light most favorable to the government, substantial evidence supports Defendant's conviction for theft of government property beyond a reasonable doubt. *See Sullivan*, 455 F.3d at 260.

---

[3] The record also includes nearly identical photographs purportedly of the two brothers obtained from the Virginia Department of Motor Vehicles. *Compare* J.A. 212, *with* J.A. 215. Given Defendant's claim that he has an identical twin brother, this evidence, standing alone, is not dispositive; but in the context of the other evidence, these images bolster the conclusion that Defendant is both Marcel Kiza and Amuri Kiza.

B.

Finally, Defendant argues that the district court's decision to circumscribe his cross-examination of Bubanji was arbitrary, enhanced Bubanji's credibility, and was not harmless error. The government responds that Defendant's line of inquiry was not directly relevant to exploring bias and the district court was well within its discretion in excluding the line of inquiry to avoid confusing the jury and wasting time.

"We review for abuse of discretion a trial court's limitation on a defendant's cross-examination of a prosecution witness." *United States v. Smith*, 451 F.3d 209, 220 (4th Cir. 2006). Exploring bias is a proper topic for cross-examination, *see United States v. Abel*, 469 U.S. 45, 50–51 (1984), but it is not without limits. A trial judge has "wide latitude" to impose reasonable limits on cross-examination to address concerns of prejudice, confusing the jury, relevance, and repetition. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Smith*, 451 F.3d at 221. And while the threshold for determining whether evidence is relevant is comparatively low, we rarely reverse such decisions because they "are fundamentally a matter of trial management." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) (quoting *United States v. Benkahla*, 530 F.3d 300, 309 (4th Cir. 2008)).

Here, the district court weighed the relevant factors and acted within its discretion. Bubanji's awareness of deportation proceedings against his sister was not relevant to his testimony about his familiarity with Defendant's identity and his relationship with Afia Kiza, the children, and Defendant. The potential bias defense counsel sought to explore was speculative. Bubanji had already testified that he did not know government agents

13

had talked to Afia Kiza and that he does not live with her. And there is no evidence that Defendant took any action to provide the government with information concerning Afia Kiza's immigration status. Finally, delving into deportation proceedings of Afia Kiza, who was not present to testify, had the potential to confuse the jury and waste time, as the district court noted. Under these circumstances, the district court's trial management on this issue was reasonable and far from an abuse of discretion. *See Zayyad*, 741 F.3d at 460–61.

## III.

We hold that social security survivors' benefits are a thing of value of the United States under 18 U.S.C. § 641. Defendant's other arguments are unavailing. Accordingly, the judgment of the district court is

*AFFIRMED*.