**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 23-4031**

————————————

UNITED STATES OF AMERICA,

　　　　　Plaintiff – Appellee,

v.

ARLEY RAY JOHNSON,

　　　　　Defendant – Appellant.

————————————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge. (8:20-cr-00220-TDC-3)

————————————

Argued: March 18, 2025　　　　　　　　　　　　　　　　Decided: April 30, 2025

————————————

Before HEYTENS and BERNER, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

————————————

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, which Judge Berner and Judge Gibney joined.

————————————

**ARGUED:** Elena Mary Quattrone, EPSTEIN BECKER & GREEN, P.C., New York, New York, for Appellant. Brandon Keith Moore, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Sarah M. Hall, EPSTEIN BECKER & GREEN, P.C., Washington, D.C., for Appellant. Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

USCA4 Appeal: 23-4031     Doc: 88        Filed: 04/30/2025      Pg: 2 of 6

TOBY HEYTENS, Circuit Judge:

Arley Ray Johnson was the chief operating officer of 1st Million, a company that claimed to be a foreign currency and cryptocurrency investment firm. In truth, 1st Million was a Ponzi scheme: it did no trading and used the funds it solicited to keep the scheme afloat and generate profit for the fraudsters. The scheme ended when Dennis Jali, 1st Million's chief executive officer, left the United States.

Johnson was tried on nine criminal counts. At trial, he insisted that he knew nothing about the fraudulent scheme and was deceived by his colleagues, including Jali. After a 10-day trial, a jury found Johnson guilty on five counts: two counts of wire fraud, one count of securities fraud, and conspiracy to commit each of them. Johnson appeals, raising various arguments. Seeing no reversible error, we affirm.

First, the district court did not abuse its discretion in limiting Johnson's cross-examination of a postal inspector who testified that Jali "fled" the United States. See *United States v. Smith*, 451 F.3d 209, 220 (4th Cir. 2006) ("We review for abuse of discretion a trial court's limitations on a defendant's cross examination of a prosecution witness."). Johnson claims he should have been allowed to dispute the notion that Jali fled the country by cross-examining the postal inspector about how the inspector "permitted Mr. Jali to board a one-way international flight to South Africa." Johnson Br. 19. But a district court has "wide latitude to impose reasonable limits on cross-examination to address concerns of prejudice, confusing the jury, relevance, and repetition," *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017) (quotation marks removed), and we see no abuse of that discretion here. Johnson makes no argument that the postal inspector had a valid arrest warrant or

3

other lawful basis to prevent Jali from leaving the country. For that reason, the district court acted within its discretion when it prevented Johnson from asking "about the circumstances under which Mr. Jali left the country," JA 625, to avoid "speculative" connections, *Kiza*, 855 F.3d at 604.[*]

Second, the district court committed no reversible error in letting the assertion that Jali "fled" the United States go to the jury as one of the overt acts supporting the securities fraud conspiracy charge. Even assuming for argument's sake that the district court erred by not striking that overt act from the jury instructions after it limited Johnson's cross-examination, we conclude any error was harmless beyond a reasonable doubt. See *Neder v. United States*, 527 U.S. 1, 8–9 (1999) (jury instruction that omits an offense element is reviewed for harmless error). Johnson's defense at trial was that he knew nothing about the fraudulent scheme, Jali's actions, or trading generally. Johnson makes no argument connecting that defense to Jali's alleged flight, nor does he identify what prejudice he faced by the district court's decision to let that single overt act—among the 33 charged in the indictment—go to the jury. And having reviewed the evidence of the other overt acts which was presented to the jury, we are satisfied any error "did not contribute to the verdict obtained." *Neder*, 527 U.S. at 15 (quotation marks removed).

---

[*] On appeal, Johnson also asserts that the limits on his cross-examination violated the Sixth Amendment's Confrontation Clause. As Johnson admits, that claim is forfeited because it was not raised before the district court. We conclude Johnson has failed to carry his burden of showing "error," much less a "clear" or "obvious" one. *United States v. Olano*, 507 U.S. 725, 734 (1993) (quotation marks removed).

Third, the district court did not abuse its discretion in admitting a newspaper article reporting that Jali had been "accused of ripping off investors" to show Johnson would have known about Jali's actions. JA 2342; see *United States v. Higgs*, 353 F.3d 281, 310 (4th Cir. 2003) (decisions to admit evidence are reviewed for abuse of discretion). Federal Rule of Evidence 901(b)(1) permits a "witness with knowledge" to authenticate evidence through "[t]estimony that an item is what it is claimed to be." Here, a witness testified to having seen the article online, provided details about the article, and identified the offered exhibit as the article the witness had seen. Nothing more was required to authenticate the article. See *United States v. Walker*, 32 F.4th 377, 393 (4th Cir. 2022). Nor did the district court abuse its discretion in concluding the article's "probative value" was not "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Two witnesses testified they told Johnson about the article, making it more likely that Johnson was aware of and participated in Jali's fraudulent actions. See Fed. R. Evid. 401 (defining relevance). And the district court instructed the jury not to consider the article "for the truth of what's in it" but "only . . . for the effect that [it] ha[d] on Mr. Johnson." JA 758; see *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) ("[T]he unfair prejudicial value of evidence can be generally obviated by a cautionary or limiting instruction." (quotation marks removed)).

Fourth, the district court did not abuse its discretion by admitting evidence that Johnson deposited more than $110,000 in cash into his personal bank accounts during his year working at 1st Million. Johnson insists "[c]ash is inherently inflammatory," Johnson Br. 34, but he cites no authority for that striking claim and we decline to endorse such a

sweeping rule, nor do we see any unfair prejudice. Moreover, Johnson's cash deposits had at least some probative value because the government presented evidence that some of the defrauded investors paid 1st Million in cash.

Fifth, the district court committed no reversible error by allowing a government witness who worked for the United States Department of Health and Human Services to testify for one day (out of two) while wearing what Johnson describes as "a military-style uniform." Johnson Br. 36. Johnson points out—and the district court acknowledged—that its "standing pretrial and trial instructions" provide that all witnesses "must appear in civilian clothing and may not display badges while testifying." JA 27, 31. But the court explained that this directive was "more of a custom and practice" and that it made a limited exception because the witness had come directly from work, had not been scheduled to testify that day, and thus had not been told what to wear. JA 698. Johnson identifies no decision from any court holding that a trial court commits reversible error by permitting a person to testify wearing their work uniform, and we will not be the first.

Finally, Johnson argues that the government committed at least four acts of misconduct that together deprived him of his right to a fair trial. As Johnson admitted at oral argument, these claims are forfeited because he never raised them before the district court. Oral Arg. 1:42–2:00. Having reviewed the various arguments, we see no "clear" or "obvious" error, either individually or collectively. *Olano*, 507 U.S. at 734 (quotation marks removed).

The judgment is

*AFFIRMED*.

6